**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. MJM-22-0140** |
| | : | |
| **DENNIS HAIRSTON** | : | |
| | : | |
| **Defendant** | : | |

## MOTION TO SUPPRESS TANGIBLE AND DERIVATIVE EVIDENCE IN VIOLATION OF THE FOURTH AMENDMENT ON AUGUST 26, 2021

Dennis Hairston, through undersigned counsel, hereby respectfully moves this Honorable Court, pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, to suppress all tangible and derivative evidence obtained in connection with law enforcement officers' unlawful and warrantless actions during his arrest on August 26, 2021, in violation of the Fourth Amendment of the United States Constitution.

## PROCEDURAL AND FACTUAL BACKGROUND

Mr. Hairston is charged by indictment with Kidnapping Conspiracy, in violation of 18 USC § 1201(c) (Count One); Hobbs Act Conspiracy, in violation of 18 USC § 1951(a) (Count Two); Kidnapping, in violation of 18 USC § 1201 (Counts Three, Seven, and Ten); Carjacking, in violation of 18 USC § 2119 (Counts Four and Eight); Hobbs Act Robbery, in violation of 18 USC § 1951(a) (Count Five and Eleven); and Use of a Firearm During Crime of Violence, in violation of  18 U.S.C. § 924(c) (Counts Six, Nine, and Twelve). ECF No. 1. The charges stem from three separate abductions that occurred on May 5, 2021; May 15 - 16, 2021; and August 2, 2021.

On August 26, 2021, Mr. Hairston was arrested by officers of the Baltimore County Police Department as they responded to a call for an attempted burglary, unrelated to the conduct charged in the instant indictment. *See* Ex. A (Baltimore County Police Case Report). At approximately

3:23 a.m., Baltimore County patrol officers were dispatched to the US Fuel, located at 4305 Southern Boulevard in reference to a burglary in progress. The dispatcher did not provide a description as to the suspects' race and clothing. When Officer K. Williams arrived, he exited his vehicle and approached the rear of the building. There, Officer Williams allegedly observed two individuals wearing dark clothing fleeing on foot in the rear of the location.

At a later time, Officer V. Moore observed two individuals running across Southern Boulevard in front of 4305 Southern Boulevard. Officer Moore apprehended one individual, later identified as Mr. Dennis Hairston, in the area of 1026 Leeds Avenue, 21229. Officer Moore withdrew his service weapon and demanded repeatedly that Mr. Hairston "get down on the ground!" Mr. Hairston complied, rolling over on the grass and spreading his arms and was placed into handcuffs. The arrest was made without a warrant and based on alleged observations by officers. Subsequent to arresting Mr. Hairston, police searched his person. A search of the left pocket of his athletic shorts resulted in the recovery of keys and a search of the right pocket of those shorts resulted in the recovery of two black Android LG phones.

## **LEGAL STANDARD**

The Fourth Amendment protects against unreasonable searches and seizures.  U.S. Const., amend IV; *see also Wilson v. Arkansas,* 514 U.S. 927, 931 (1995) ("the underlying command of the Fourth Amendment is always that searches and seizures be reasonable."). "The Supreme Court has recognized three distinct types of police-citizen interactions: (1) arrest, which must be supported by probable cause, *see Brown v. Illinois,* 422 U.S. 590 (1975); (2) brief investigatory stops, which must be supported by reasonable articulable suspicion, *see Terry v. Ohio,* 392 U.S. 1 (1968); and (3) brief encounters between police and citizens, which require no objective

justification, *see Florida v. Bostick*, 501 U.S. 429 (1991)." *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002).

Warrantless searches and seizures are *per se* unreasonable, and the burden is on the government to establish that a search or seizure falls within a well-established exception to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *Stoner v. California*, 376 U.S. 483, 486 (1964); *United States v Jeffers*, 342 U.S. 48, 51 (1951); *United States v. Gwinn*, 219 F.3d 326, 335 (4th Cir. 2000). An infringement on such freedom for an investigatory stop and seizure is only justified when there are "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. In order to arrest, the standard is heightened and law enforcement must establish that they have probable cause to do so. *Maryland v. Pringle*, 540 U.S. 366, 369 (2003). Probable cause arises when "facts and circumstances with the officer's knowledge … are sufficient to warrant a prudent person, or one of reasonable caution in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). This belief of guilt must be particularized to a specific individual. *Ybarra v. Illinois*, 444 U.S 85, 91 (1979). And although probable cause requires less than the standard of evidence needed to convict, it requires more than "bare suspicion." *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998).

Whether probable cause exists depends on the totality of the circumstances viewed from the perspective of a reasonable police officer. *Pringle*, 540 U.S. at 371; *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996). The Fourth Circuit emphasized that in order to justify a frisk – requiring a lower standard than used to justify an arrest – "the Constitution requires 'a *particularized* and objective basis for suspecting *the particular person stopped* of criminal activity.' " *United States*

*v. Massenburg*, 654 F.3d 480, 486 (4th Cir. 2011) (quoting *United States v. Griffin,* 589 F.3d 148, 152 (4th Cir.2009)). In holding the stop unlawful, the court found that the anonymous tip neither provided any predictive information about the suspect nor tested the knowledge or credibility of the informant. *Id*. at 486-487. In addition, the court found that the tip's reliability was undermined because it did not include a "physical description of the perpetrators or any other outward identifying features," meaning that "the only link between the tip and Massenburg's group was [their] rough proximity to the alleged site of the gunfire." *Id.* at 487. *cf. United States v. Jones,* 242 F.3d 215, 218 (4th Cir.2001) (concluding that the anonymous tip at issue, which alleged that several black males were "causing a disturbance" and consuming alcohol, "was so barren of detail about the alleged culprits' physical descriptions that it was even less reliable than the deficient tip in [*Florida v. J.L.* 529 U.S. 266 (2000)]").

Moreover, probable cause cannot be supplied merely because an individual ran from police, an act which is "not necessarily indicative of wrongdoing."[1] *Illinois v. Wardlow*, 528 U.S.

---

[1] Courts have started to acknowledge that the history of negative interactions between the police and black men has made the decision to run from police an understandable one—even by those who are not engaged in wrong doing. *See Com. v. Warren*, 475 Mass. 530, 538-39 (2016) (holding that "flight to avoid [police] contact should be given little, if any, weight as a factor probative of reasonable suspicion" and that "where the suspect is a black male stopped by the police on the streets of Boston, the analysis of flight as a factor in the reasonable suspicion calculus cannot be divorced from the findings in a recent Boston Police Department (department) report documenting a pattern of racial profiling of black males in the city of Boston.") *See also United States v. Curry*, 965 F.3d 313, 332 (4th Cir. 2020) (Gregory, C.J., concurring) ("There's a long history of black and brown communities feeling unsafe in police presence."); *United States v. Brown*, 925 F.3d 1150, 1155, 1156 (9th Cir. 2019) ("the Court has a long history of recognizing that innocent people may reasonably flee from police" and "[i]n evaluating flight as a basis for reasonable suspicion, we cannot totally discount the issue of race."); *Wardlow*, 528 U.S. at 132-33 (Stevens, J., concurring in part and dissenting in part) ("Among some citizens, particularly minorities and those residing in high crime areas, there is also the possibility that the fleeing person is entirely innocent, but, with or without justification, believes that contact with the police can itself be dangerous. … For such a person, unprovoked flight is neither 'aberrant' nor 'abnormal.'")

199, 124 (2000).  *See also Florida v. Bostick*, 501 U.S. 429, 437 (1991) (holding that the "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.").

## ARGUMENT

Office Moore's initial encounter with Mr. Hairston was a Fourth Amendment seizure. This was much more than an investigatory stop; Mr. Hairston was ordered on the ground at gunpoint, surrounded by multiple offers, and almost immediately placed in handcuffs. This amounted to a custodial arrest that was executed in the absence of probable cause.

The content of the 911 call, which was relayed to the various officers by dispatch, contained only allegations that a burglary was in progress at the US Fuel, located at 4305 Southwestern Boulevard. The content of the tip provided even less support for a stop and frisk than that in *United States v. Massenburg* let alone an arrest, as there was no description of the suspects, much less "predictive information," which would allow police "to test the informant's knowledge or credibility. Because of the lack of descriptive information*,* the only link between the information broadcasted by dispatch and Mr. Hairston was his proximity to US Fuel and his flight from officers. At an evidentiary hearing it will become clear that the totality of facts did not amount to reasonable suspicion, let alone the higher standard of probable cause that was necessary to justify the arrest of Mr. Hairston on August 26, 2021.

The appropriate remedy is suppression of all the evidence, both direct and derivative. *United States v. Oscar-Torres*, 507 F.3d 224, 227 (4th Cir. 2007) ("Indisputably, suppression of evidence obtained during illegal police conduct provides the usual remedy for Fourth Amendment violations."). Since the officers' stop of Mr. Hairston cannot be justified as a lawful warrantless arrest, however, all evidentiary fruits of the frisk as well as post-arrest statements are "fruits of the

poisonous tree" which must be suppressed as well. *Wong Sun v. United States*, 371 U.S. 471 (1963); *see also Weeks v. United States*, 232 U.S. 383 (1914) (establishing the exclusionary rule that bars the use of illegally obtained evidence at trial).

Because the discovery process and the investigation of this case is incomplete, Mr. Hairston reserves the right to move for suppression of evidence based on grounds not now discernible. Further, Mr. Hairston reserves the right to supplement this motion with additional arguments and information.

<u>**CONCLUSION**</u>

As a result of the constitutional violations alleged herein and any other ground that may become apparent upon a hearing on the motion, Mr. Hairston requests that this Court enter an Order suppressing any evidence seized in connection with the illegal seizure noted above.

Respectfully submitted,

James Wyda
Federal Public Defender
 for the District of Maryland

_____/s/_____
Sasha Garcon (#817494)
Andrew Szekely (#16407)
Assistant Federal Public Defenders
100 S. Charles Street, Tower II
Suite 900
Baltimore, MD 21201
Phone: 410-962-3962
Email: sasha_garcon@fd.org
        andrew_szekely@fd.org