**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**DISTRICT OF MARYLAND**
NORTHERN DIVISION
100 S. CHARLES STREET
TOWER II, 9th FLOOR
BALITMORE, MARYLAND 21201
TEL: (410) 962-3962
FAX: (410) 962-3976

JAMES WYDA                                                                                      SASHA GARCON and ANDREW SZEKELY
FEDERAL PUBLIC DEFENDER                                                          ASSISTANT FEDERAL PUBLIC DEFENDER

May 19, 2024

The Honorable Brendan A. Hurson
United States District Judge
United States District Court
101 West Lombard Street
Baltimore, MD 21201

Re:   *United States v. Dennis Hairston*, Crim. No. 1:22-cr-00140-BAH

Dear Judge Hurson:

This letter is submitted in response to the Court's letter dated May 17, 2024, advising counsel of recent activity in the above-captioned case.

The May 17th letter identifies two communications from jurors that undermine Mr. Hairston's right to a fair trial. The first, an email from an anonymous juror to Courtroom Deputy Yasmine Kelly, reports that: (i) two jurors may "already have their minds made up" about defendants' guilt before the close of evidence; (ii) one or more jurors made "numerous comments" the previous day "about whether or not the 'defendants' had priors, etc."; and (iii) at least one juror stated that the defendants "should be in handcuffs" in the courtroom. *See* Letter to Parties Regarding Juror Communication dated May 17, 2024 at 1. The Court has characterized the email as merely conveying "one juror's view of other jurors' potential views." *Id.* at 2.

The second communication, a telephone call from Juror #5 to Ms. Kelly, referenced an earlier comment she had made about the jury's safety. The caller said her safety concerns were triggered by hearing about another person's experience in the parking garage—which differed from Ms. Kelly's earlier statement that the juror describing seeing a video of a defendant lunging toward the bench in a Las Vegas courtroom. *Id.* at 1. The Court describes the call as "straightforward" and "frank," while acknowledging that it "may merit further inquiry." *Id.* at 2.

This Court concludes the letter by stating that neither communication changes its earlier analysis because both preceded "each juror's [in-court] re-affirmation of their ability to remain fair and impartial." *Id.* Undersigned counsel respectfully disagrees. According to the May 17th letter, two jurors may have prematurely

reached a decision on the defendants' guilt, multiple jurors have disregarded the Court's instruction not to discuss the case prior to deliberations, at least one juror has raised questions about evidence outside the record, and at least one juror has lied to this Court. Under the circumstances, Mr. Hairston requests that the Court declare a mistrial. *See United States v. Vasquez-Ruiz*, 502 F.3d 700, 707 (7th Cir. 2007) (holding that in absence of record about circumstances of note found in juror's notebook, potential jury misconduct "could be cured only by granting a mistrial").

Alternatively, Mr. Hairston urges the Court to conduct an evidentiary hearing to explore the circumstances surrounding the courtroom deputy's communications with jurors. *See Remmer v. United States*, 350 U.S. 377, 379 (1956) ("A court confronted with a colorable claim of juror bias must undertake an investigation of the relevant facts and circumstances."); *Smith v. Phillips*, 455 U.S. 209, 217 (1982) (stating that due process requires only that all parties be represented and that the investigation be reasonably calculated to resolve doubts about jurors' impartiality).

At the very least, this Court should conduct a more searching individualized voir dire to develop the record regarding the identities and statements of each juror referenced in the May 17th letter. *United States v. Smith*, 919 F.3d 825 (4th Cir. 2019).

### A. The May 17th Letter Compounds the Existing Evidence of Jury Bias

The comments described in the May 17th letter must be viewed in the context of events of the past week, not in isolation. As this Court knows, on May 15th, Ms. Kelly reported that an individual juror, in front of other jurors, asked whether the jury was "safe." The Court also relayed another conversation, during which several jurors discussed a video of a defendant lunging toward the bench in a Las Vegas courtroom. At least one juror then asked whether the defendants in this case should be handcuffed.[1] In response, Ms. Kelly stated that federal courts had more protections in place than state courts.

The comments in the May 17th letter merely add to the existing evidence of jury bias in this case. The email from the anonymous juror stated that one or two jurors "already have their minds made up" regarding the defendants' guilt. The juror then described the evidence supporting her belief: *first*, that there had been "numerous comments" about the defendants (including their "prior" crimes); and

---

[1] It is not clear from the Court's description of the earlier conversations whether they occurred at the same time or whether they involved the same jurors. Mr. Hairston asks the Court to clarify the record as to which jurors were involved in or overheard which conversations.

*second*, one juror announced that the defendants "should be in handcuffs." Due to those and other unidentified comments suggesting a presumption of guilt ("etc."),[2] the juror "[felt] like both of them will not be able to provide a fair judgment." Letter to Parties Regarding Juror Communication dated May 17, 2024 at 1. In other words, the juror was not simply guessing about the other jurors' loss of impartiality. She heard comments that directly violated this Court's twice-daily, at minimum, admonition to the jury that they not discuss the case prior to deliberations.

### B. The May 17th Letter Establishes That At Least Two Jurors Already Disregarded This Court's Clear Instructions

In addition to adding to the evidence of jury bias, the communications in the May 17th letter also reveal that at least two jurors have disregarded this Court's clear instructions—to wit, that jurors refrain from discussing the case, even amongst themselves, prior to the close of evidence; and that jurors only consider the evidence presented during trial, without turning to outside sources.

That multiple jurors may be predisposed to believing Mr. Hairston is guilty before the close of evidence is particularly disturbing. *United States v. Haynes*, 729 F.3d 178, 191-92 (2d Cir. 2013) (reversing conviction where district court refused to engage in inquiry after report that prior to deliberations, jurors suggested the defendant was guilty "[because] she's here"); *United States v. Resko*, 3 F.3d 684 (3d Cir. 1993) (finding court abused its discretion by failing to engage in further inquiry, such as individualized voir dire, to determine whether jurors were impartial after discovering they had engaged in premature discussions of case).

What is more, in light of the email's comment about the defendants' "priors," it appears that at least one juror may have already disregarded (or is inclined to disregard) the Court's instruction that they only consider the evidence presented at trial. Should one of the jurors decide to investigate, evidence of Mr. Hairston's criminal record would be easily found. *See* Exhibit A (result of Google search for "Dennis Hairston," May 17, 2024). In fact, the first result that appears from a Google search of Mr. Hairston's name is an article dated April 15, 2022, about the instant case. *See* Exhibit B ("Four Baltimore Area Men Facing Federal Indictment for Three Kidnappings and Related Charges"). Even without clicking on the article, the search summary reveals that "[Mr.] Hairston [was] in federal custody in Pennsylvania *on unrelated charges.*" *Id.* (emphasis supplied). Another article on the first page of Google's search results reports that in August 2010, a court sentenced Mr. Hairston to 130 months' imprisonment for two armed carjackings. Exhibit C ("Baltimore Man Exiled to over 10 Years in Prison For Two Armed Carjackings").

---

[2] At the very least, an evidentiary hearing is needed to identify what specific comments the jurors made that were described as "etc." in the email.

Response to the Court's Letter dated May 17, 2024
May 19, 2024
Page 4 of 4

### C. This Court Cannot Rely on Jurors' Blanket Declarations of Impartiality

In the May 17th letter, this Court suggests that jurors' recent comments are not concerning because they preceded "each juror's re-affirmation of their ability to remain fair and impartial" the previous day. Letter to Parties Regarding Juror Communication dated May 17, 2024 at 2. But there are two problems with the Court accepting jurors' claims of impartiality on their face. First, it is apparent that one juror has already lied to this Court. On May16, 2024, the Court conducted individual voir dire to determine whether a juror's professed fears about safety had tainted the jury. During voir dire, many jurors affirmed that they overheard a juror discuss safety with Ms. Kelly; yet, under direct questioning by this Court, no juror admitted to having made the statements. *See Dyer v. Calderon*, 151 F.3d 970 (9th Cir. 1998) ("For voir dire to function, jurors must answer questions truthfully."); *Conaway v. Polk*, 453 F.3d 567, 588 (4th Cir. 2006) ("[D]ishonesty, of itself, is evidence of bias") (internal quotations omitted); *see also United States v. Colombo*, 869 F.2d 149, 151-52 (2d Cir. 1989) (recognizing that lying during voir dire is inconsistent with obligation to "weigh the evidence fairly and obey the instructions of the court").

Additionally, Juror #5 told Ms. Kelly that her previous concerns about safety were "not related to the defendants," even though she expressed fear that they might retaliate. In the telephone conversation two days later, Juror #5 (who appears to be the same person Ms. Kelly described) explained that her concerns arose from hearing about another juror's experience in the parking garage.

Even assuming, arguendo, that there is an innocuous explanation for the fearful juror's silence and shifting story, the mere claim of impartiality is not sufficient to erase the evidence of bias. This is because district courts must be vigilant in searching for bias, even where it is only *implicit*. *See Dyer v. Calderon*, 151 F.3d at 978 ("Where juror misconduct or bias is credibly alleged, the trial judge . . . has an independent responsibility to satisfy himself that the allegation of bias is unfounded."). In this case, every juror who affirmed his impartiality on May 16th may *believe* he can be fair, presume the defendants' innocence, and only consider evidence that is presented in court. But the contents of the May 17th letter throw the jurors' actual fealty to those principles into doubt. Two unidentified jurors have already made so many statements about the defendants' presumptive guilt and previous crimes that another (anonymous) juror requested they be removed. At least one juror expressed, in the presence of other jurors, fear of the defendants. And at least one juror announced that the defendants "should be in handcuffs"—a statement that clearly belies any presumption of innocence.

Response to the Court's Letter dated May 17, 2024
May 19, 2024
Page 5 of 4

### D. Conclusion

On this record, it is impossible for Mr. Hairston to receive a fair trial. This Court should declare a mistrial. Alternatively, the Court should hold an evidentiary hearing so that a clear record of jurors' discussions with the courtroom deputy can be fully developed. At the very least, this Court should conduct a more searching inquiry, through individualized voir dire, to identify the jurors referenced in the May 17th letter and examine their ability to be impartial.

Gary Proctor and Jennifer Smith, counsel for Mr. Stanley, join in this response.

Sincerely,

Sasha Garcon / Andrew Szekely
Assistant Federal Public Defenders
100 South Charles Street Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: (410) 962-3962
Fax: (410) 962-3976
Email: andrew_szekely@fd.org
       sasha_garcon@fd.org