

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

Paul E. Budlow
Assistant United States Attorney
Paul.Budlow@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4917
MAIN: 410-209-4800
FAX: 410-962-3091

September 6, 2024

The Honorable Brendan A. Hurson
United States District Judge
United States District Court for the District of Maryland
United States Courthouse
101 West Lombard Street
Baltimore, MD 21201

> Re:    **United States v. Dennis Allen Hairston & Donte Davon Stanley**
> Case No.:  BAH-22-140

Dear Judge Hurson:

I write on behalf of the United States in response to the Court's August 13, 2024, Letter to All Counsel of Record and defendants Dennis Hairston's and Donte Stanley's August 30, 2024, Letter regarding former Courtroom Deputy Yasmine Kelly.

As set forth in more detail below, the government agrees that the Court should promptly convene a factual hearing at which Ms. Kelly testifies regarding whether her undisclosed tentative offer of employment from the U.S. Attorney's Office affected her interactions with jurors during trial in this case. Contrary to defendants' suggestion, however, such a hearing should not be conducted pursuant to *Remmer v. United States*, 347 U.S. 227 (1954). Testimony should be limited to Ms. Kelly. Assuming that Ms. Kelly credibly affirms that her undisclosed offer of employment did not affect her interactions with jurors, this case should proceed to sentencing and any eventual motion for a new trial should be denied. The government is prepared to proceed to sentencing in November as currently scheduled, but defers to the Court on the defendants' request to delay the sentencing hearings.

## I.    A Limited Evidentiary Hearing Probing Of Ms. Kelly's Interactions With Jurors Is Appropriate

The government does not oppose a limited factual hearing at which Ms. Kelly testifies regarding whether her undisclosed tentative offer of employment affected the performance of her duties as courtroom deputy. However, the government disagrees with much of the specifics of defendants' request. Below, the government sets forth its view of how such a hearing should proceed.

1

**Stipulation**:  The government stipulates to the facts contained in the attachment to the Court's July 3, 2024, Letter.

**Nature of Hearing**:  Defendants ask the Court to "convene a *Remmer/Smith* hearing." Defs. Ltr. at 1.  The government does not oppose an evidentiary hearing convened for the purpose of assuring there were no improper interactions between Ms. Kelly and the jurors in this case.  But a hearing under *Remmer* is unwarranted.

A *Remmer* hearing is required under specific circumstances: when the Court receives "a credible allegation of a non-innocuous external influence" on the jury.  *United States v. Johnson*, 954 F.3d 174, 180 (4th Cir. 2020) (internal quotation marks omitted).  If the defendant establishes the existence of such an influence, "he is entitled . . . to a rebuttable presumption that the external influence prejudiced the jury's ability to remain impartial, and . . . to an evidentiary hearing to determine what actually transpired and whether the challenged contact was harmless." *Id*. at 179 (internal quotation marks omitted).  But this "presumption is not one to be casually invoked." *Stockton v. Virginia*, 852 F.2d 740, 745 (4th Cir. 1988).  Rather, "the defendant must first establish both that an unauthorized contact was made and that it was of such a character" as to require corrective action. *Id*. at 743.

There is simply no credible allegation of a "non-innocuous external influence" on the jury necessary to trigger a *Remmer* proceeding.  The only known interaction between Ms. Kelly and the jurors (beyond routine logistics) related to a discussion regarding safety in the courtroom—an interaction that Ms. Kelly brought to the Court's attention.  Unprompted, certain jurors raised the subject of courtroom security, discussed the lack of restraints on defendants, and contrasted their observations in court with what some may have seen on television programs.  Ms. Kelly made certain generalized statements about the security in federal court.  The Court already analyzed that interaction and correctly concluded it did not implicate *Remmer* because the interaction was not an external influence and was merely innocuous.  Ex. A (May 16, 2024, Tr.) at 17-20.  The Court ultimately conducted a non-*Remmer* inquiry of each juror, each of whom assured the Court that he or she remained impartial.

The attorneys of record and the Court have since learned that Ms. Kelly had a tentative job offer from the U.S. Attorney's Office at the time this interaction occurred.  But no additional facts have come to light suggesting that Ms. Kelly said anything other than what the Court previously characterized as a "generalized statement made . . . to try[] to blandly move the conversation along" from jurors' unprompted discussion regarding courtroom safety. Ex. A at 19:15-17.  Accordingly, while an evidentiary hearing is appropriate, a hearing pursuant to *Remmer* is unwarranted.[1]

**Witnesses**:  Defendants state that they anticipate calling five witnesses: (1) Ms. Kelly; (2) Kristy Penny, a Supervisory Legal Administrative Specialist in the U.S. Attorney's Office; and (3) three jurors.  Of these, only Ms. Kelly is an appropriate witness.  The ultimate purpose of any hearing is to confirm that Ms. Kelly had no improper interactions with the jurors in this case.  Only Ms. Kelly's testimony is necessary to answer that question.

---

[1] If a factual inquiry revealed the existence of previously unknown, non-innocuous interactions between Ms. Kelly and the juror, a *Remmer* hearing could be appropriate at that time.

With respect to Ms. Penny, defendants assert that her testimony is needed to "have a full picture of how Ms. Kelly was hired." Defs. Ltr. at 2. But the June 28, 2024, letter from Chief Deputy Clerk David E. Ciambruschini to the Court sets forth the timeline of Ms. Kelly's hiring, and defendants have stipulated to those facts. Defs. Ltr. at 2. Rather than probing the facts surrounding Ms. Kelly's employment, defendants seek to take testimony "about the USAO's hiring practices as they relate to conflicts and office policy on hiring court employees who are actively working on matters the USAO is litigating." Defs. Ltr. at 2. Putting to one side the fact that Ms. Penny is not the USAO's ultimate decision-making authority, any testimony regarding hiring procedures would be irrelevant to the question the Court must answer: Whether Ms. Kelly's undisclosed tentative offer of employment affected any of her interactions with the jury.

With respect to Jurors 1, 5, and 9, those witnesses, too, are inappropriate. After learning that some jurors raised the topic of courtroom safety following victim testimony, the Court conducted further voir dire with each juror. Each affirmed his or her ongoing partiality. Nothing has called those assurances into doubt. Jurors 5 and 9 both contacted the Court following that hearing; Juror 5 clarified certain details regarding the safety discussion while Juror 9 raised her personal concerns about another juror. The Court conducted further, probing voir dire with both jurors and confirmed that the jurors remained impartial. Once again, nothing has called that conclusion into doubt.[2]

Defendants vaguely claim that "a more detailed inquiry with the jurors" is needed. Defs. Ltr. at 3. That is little more than a request for a fishing expedition—one that will invite violations of Federal Rule of Evidence 606. Rule 606 broadly prohibits testimony from jurors on "any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment." Exceptions exist. A juror may testify about "extraneous prejudicial information [that] was improperly brought to the jury's attention" and "an outside influence [that] was improperly brought to bear on any juror." Rule 606(b)(2)(A) & (B).

There is *no* evidence of prejudicial extraneous information or improper outside influence, however. Defendants only speculate otherwise, and that is insufficient. *See United States v. Muhammad*, 819 F.3d 1056, 1062-1063 (8th Cir. 2016) (affirming denial of motion for new trial where defendant produced affidavits that juror's husband took notes on trial and improperly communicated with juror, because defendant could only "speculat[e] about what the juror and her husband discussed"). If there was reason to believe that the jurors were exposed to an improper outside influence, then—and only then—may it be proper to seek jurors' testimony on that point.

**Questioning of Witnesses & Recusal**: The Court's August 13, 2024, Letter directed defendants to specify whether counsel or the Court should conduct questioning. The Court has

---

[2] It is also unclear why defendants seek to call Jurors 1, 5, and 9 specifically. A number of other jurors testified that they overheard the discussion regarding courtroom safety. Presumably defendants seek to call the identified jurors because Jurors 5 and 9 contacted the Court following further voir dire. But those communications were fully addressed at trial and defendants identify no reason to revisit them; certainly, there is no suggestion that those communications concerned Ms. Kelly (except that Juror 9 emailed Ms. Kelly, who apparently passed the message along to the Court). Defendants should not be permitted to reopen matters that were resolved at trial.

"ample leeway" to determine how a proceeding would unfold, including what questions would be asked. *United States v. Smith*, 919 F.3d 825, 834 (4th Cir. 2019).

Questioning should be conducted by the Court, with input as to the questions from the parties. Any hearing would have a narrow focus: confirming that Ms. Kelly's undisclosed tentative employment offer did not affect her interactions with the jury and that her interactions with the jury were proper. The Court would be best positioned to question Ms. Kelly in a way that remains focused on that essential and narrow issue.

If the Court permits defense counsel to question the witness, government trial counsel should be permitted to question the witness for the government. Defendants argue that the U.S. Attorney's Office and trial counsel "be recused from further participation in this case as it relates to Ms. Kelly" because her "communications with government trial counsel are likely to be at issue, and they would be questioned by someone is, in effect, their boss." Defs. Ltr. at 1. There is no basis for recusal. Trial counsel have no financial or other improper interest in this case. They do not have any "unusually strong emotional interest" in this case, such that recusal might be warranted. *Wright v. United States*, 732 F.2d 1048, 1056 (2d Cir. 1984) (Friendly, J.).

Defendants also argue that recusal is needed because Ms. Kelly's "communications with government trial counsel are likely to be at issue." As officers of the Court, trial counsel state that they were unaware of Ms. Kelly's job application or offer of employment, and their communications with her were limited to routine communications necessary to courtroom administration and for Ms. Kelly to execute her duties as courtroom deputy (e.g., communications related to courtroom access or courtroom logistics).

**Sealing**: The government's view is that it is unnecessary to conduct any hearing under seal. The government opposes defendants' request that Ms. Kelly's personnel file be produced to the Court for *in camera* review on the basis that it is irrelevant to the question of her interactions with jurors.

## II.    Subsequent Proceedings

The Court directed defendants to set forth their view on how to proceed in this case assuming Ms. Kelly "testifies to a timeline consistent with what was outlined in the July 3rd letter (and its attachment) and affirms that her offer of employment had no impact on her communication and interactions with the jurors." Aug. 13 Ltr. at 2. Defendants argue that the Court should order a new trial if the Court finds that Ms. Kelly exerted an improper influence on any juror. They also appear to argue that, regardless of whether the Court finds an improper influence, her undisclosed conflict should be imputed to the Court and a new trial should be ordered in any case. The government addresses both circumstances below.

First, if Ms. Kelly credibly testifies that her undisclosed offer of employment did not affect her communication and interactions with the jurors, this matter should proceed to sentencing and judgment and any eventual motion for a new trial should be denied. As stated, *Remmer* requires a "credible allegation" of a non-innocuous external influence. *Johnson*, 954 F.3d at 179. If Ms. Kelly's testimony establishes that she did not improperly communicate with the jury, then there is no credible allegation necessary to trigger *Remmer*.

If there *were* evidence of improper communications—which the government does not anticipate—then the defendants would be entitled to a "rebuttable presumption that the external influence prejudiced the jury's ability to remain impartial." *Id.* The government would then "bear[] the burden of rebutting the presumption of prejudice by showing that there was no reasonable possibility that the jury was influenced by an improper communication." *Id.* at 179-180 (internal quotation marks omitted). It could then be appropriate to call jurors as witnesses at a subsequent evidentiary hearing to assess any impact of such (hypothetical) communications.

Second, defendants appear to also argue that because Ms. Kelly did not disclose her tentative offer of employment, any conflict on her part should be imputed to the Court. Thus, defendants contend, a new trial is required—apparently without regard to the outcome of any factual inquiry. Defs. Ltr. at 4 ("Here, it is too late for Ms. Kelly to be walled off from the case. The proper remedy, therefore, is a new trial."). Defendants are mistaken.

There is no basis to impute any conflict to the Court. "[R]ecusal is warranted on the basis of a judicial employee's relationships only when the employee has (or appears to have) a role in the substantive decision-making process." *In re Horne*, 630 F. App'x 908, 911 (11th Cir. 2015) (unpublished). To the government's knowledge, as courtroom deputy Ms. Kelly would not have participated in substantive matters before the Court (e.g., assisting in the resolution of motions or other matters). Instead, her participation in the trial would have been limited to purely ministerial matters. There is thus no basis to impute Ms. Kelly's undisclosed offer of employment to the Court.

Indeed, the principal case on which defendants rely, *United States v. Martinez*, 446 F.3d 878 (8th Cir. 2006), demonstrates the point. There, a judge's law clerk had participated extensively as an Assistant U.S. Attorney *in the case itself*. Specifically, he had "presented [the defendant's] case to the grand jury, signed the indictment, represented the United States in the early pretrial phase of the prosecution, and cross-examined [the defendant] at a suppression hearing." *Id.* at 883. Contrary to defendants' argument, the clerk in that case was not entirely walled off from the case. Rather, the clerk undertook "the duties of courtroom deputy" for a hearing in the defendant's case "due to a staff shortage." *Id.* at 883. The Eighth Circuit agreed that recusal was unwarranted because the clerk "served only ministerial functions in the courtroom." *Id.*; *see also Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1312-1313 (10th Cir. 2015) (holding recusal not required where law clerk's spouse had been hired by defendant's insurer to monitor trial because the law clerk "performed only ministerial functions" and "did not participate in drafting post-trial" orders); *Hunt v. American Bank & Trust Co. of Baton Rouge*, 783 F.2d 1011, 1015-1016 (11th Cir. 1986) (holding that recusal was not required where a matter was assigned "for a time" to a law clerk for "ministerial" matters who accepted an employment offer with the defendants' firm). Here, Ms. Kelly was a courtroom deputy executing similar "ministerial" tasks and played no role in substantive decision-making.

To be sure, Ms. Kelly interacted with jurors in the course of carrying out her role as courtroom deputy, and at that time had an undisclosed tentative offer of employment. But the proper course is to conduct a factual inquiry into Ms. Kelly's interactions with jurors. Arguments about recusal are a distraction.

Respectfully submitted,

Erek L. Barron
United States Attorney


By: _____/s/_____
    Paul E. Budlow
    Spencer L. Todd
    Assistant United States Attorneys


Cc:    Counsel for Defendants Hairston & Stanley