IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

UNITED STATES OF AMERICA, )
)
vs. ) CRIMINAL CASE NO. BAH-22-0140
)
DENNIS ALLEN HAIRSTON and )
DONTE DAVON STANLEY )

THURSDAY, MAY 16, 2024
Courtroom 3A
Baltimore, Maryland

JURY TRIAL EXCERPTS

BEFORE: THE HONORABLE BRENDAN A. HURSON, Judge

On Behalf of the United States:

Paul Budlow, Esquire
Spencer Todd, Esquire
Assistant United States Attorney

On Behalf of the Defendant:

Sasha Garcon, Esquire
Andrew Szekely, Esquire
Office of the Public Defender

Gary E. Proctor, Esquire
Jennifer E. Smith, Esquire

(Computer-aided Transcript of Stenotype Notes.)

Reported by: Kassandra L. McPherson, RPR
Federal Official Court Reporter
101 W. Lombard Street, 4th Floor
Baltimore, MD 21201
(410) 962-4544

(Requested portion of transcript begins.)

THE COURT: We're back on in 22-140. Everyone is present. Be seated.

All right, Government, you did not get a chance to respond in writing to the -- what is the ECF number?

MS. GARCON: We had filed a corrected one. And so the corrected one is at ECF 201.

THE COURT: 201, all right. So, you didn't get a chance to file a written response, so why don't you take five minutes and let me know what your thoughts are, if there's any sort of agreement, or just whatever you want to talk about that's related to that.

MR. TODD: Thank you, Your Honor.

Our position is that this is just not a situation in which Remmer is applicable. Remmer is about extra judicial communications, or contacts between a juror and third party. The classic example is bribery of a juror, threatening a juror, pressuring a juror on how to vote. This simply doesn't involve any kind of extra communication. But what we have here is a juror expressing his or her subjective fear, and that subjective fear arose out of evidence that was given in court.

And I think the defense tries to kind of shoehorn into the Remmer framework by framing it as a contact between a juror and the courtroom deputy. And I think what we have is a juror made an unprompted remark based on the testimony that he or she

 listened to attentively, and the courtroom deputy, as an arm of the court, I think appropriately, just kind of, it sounds like, blandly tried to move the conversation along with sort of a generic, you know, attempt to alleviate the juror's concern. At most, I think that that would constitute innocuous intervention which also doesn't trigger Remmer.

I think all that we're seeing is that jurors are listening attentively. Yesterday they listened to some horrifying testimony, and not unreasonably that could prompt some subjective concerns or fear. But those feelings arise out of the proceedings itself.

And I just want to talk about some of the cases that I think have been cited by defense and have been cited in court today.

So first is United States versus King, and I think Your Honor mentioned that earlier and it's just on point. There you had a note from the juror, which I think is a far more formal communication and I think it reflects a real crystallization of how jurors feel rather than an unprompted statement in which jurors' express safety concerns.

And there, the Seventh Circuit, this is 627 F.3d 641, and I'm about to quote page 650. Nothing in the notes suggested exposure to outside influence, because that is what is at the heart of Remmer, outside influence.

And similarly, Garcia versus Andrews, 488 F.3d 370, Sixth

 Circuit 2007, found that a juror's own subjective fear was not extrinsic to the trial. And that is exactly what we have here; a juror's subjective fear.

And to turn to the United States versus Small, which I think was also discussed earlier. There you had a situation where I think it was two jurors approached the courtroom deputy to say that they were afraid. Not because of testimony that they had heard in court but because of, you know, inferences they were drawing based on how members of the gallery, who are external to the judicial proceeding, appear to be looking at them. And there the court said that this, you know, it's probably not even an external source because, you know, the contact -- there isn't really a contact it's just observing a person.

But I think it's worth emphasizing what the Fourth Circuit properly, you know, praised the district court for doing. There what the district court did was not hold a Remmer inquiry, but rather address the root of the jurors' concern; which was increase security, encourage the jurors to report security concerns, and tell them clearly how to do that. And the point is, that the district court, by addressing the root of the jurors' fear eliminates any conceivable downstream risk of bias. And I don't think that's necessary here because there's been nothing to indicate that there have been more fears raised. But again, a Remmer wasn't needed in Small and it wasn't really a

Remmer situation.

And finally, United States versus Johnson, Fourth Circuit -- 2024 Fourth Circuit case. There, again, you have a crystal clear external contact which is members of the gallery taking photographs of the jurors and that is then relayed to other members of the jury panel. So that is patently external to the proceedings. And the relaying of that -- of that contact, which could reasonably provoke fear in what I think was a case in which multiple witnesses had been killed, was not innocuous.

This is a situation in which the courtroom deputy, who is an arm of the court, and, in fact, the person the jurors are instructed to go to to speak to the court, just kind of said something a little bit bland to just move the conversation along.

So our position is that we are just not in a situation in which Remmer applies. And finally, a prudential point, which is that we are less than one week into a three week, possibly more, trial and we're already down two jurors; we've only got one alternate left. And, you know, it's just something that we need to keep in mind.

THE COURT: Yeah. I think the case law seems clear. I can't really consider --

MR. TODD: Understand.

THE COURT: -- that type of stuff.

MR. TODD: And our position is really just that this

is not a situation in which Remmer applies.

THE COURT: So, I guess the question would be, first off, with respect to the juror expressing reaction to testimony, I agree that's not an issue. I think the defenses' issue is the statement regarding security. And this is federal court not state court is implying that there's something different here. I mean, quite literally there is something different here; there's more security, that's not incorrect, and it applies to everyone. I think what's interesting to me is that the -- if the issue is, is someone going to attack me in the jury box or me as the judge or anyone, it applies across the board. And it seemed -- my interpretation was it was a far more generalized comment.

But I guess what I'm getting at is what's the harm in simply saying to the jurors one at a time, look, I understand there may have been this conversation about courtroom or courthouse security yesterday, did you participate in it? And if you did, or even if you didn't, did you hear it? Okay. Let's say somebody says yes, I participated in it, or yes, I heard it. Does anything you hear or say impact your ability to be fair and impartial? What's the downside to that?

MR. TODD: I think the harm is exactly what the Fourth Circuit highlighted in Small, which is that the questioning process itself plants in jurors' minds, and I'm quoting at page 505, "The questioning process could plant in jurors minds the

notion that perhaps something untoward is afoot."

THE COURT: Except for this. Except that I've now narrowed it to say, look, this is all about this conversation that happened yesterday. I understand if people said well, what conversation are you talking about perhaps, but that's the risk the defense runs in asking for this. But assuming there was sort of a jovial conversation, as I'm understanding it to be, nothing specific to here and just more about hey, did you see that video or, you know, I wonder what's the security protocol, it wouldn't be the same concern.

I think the generalized question the defense has asked is has anything happened. I'm not going to ask that because I don't think -- I think that invites far too much speculation and will do exactly what you're saying. I guess I'm trying to get your take on that specific. If I narrow it to just look, that conversation, what do you think?

MR. TODD: Court's indulgence.

THE COURT: Yeah, take some time. That's fine.

(Pause in the proceedings.)

MR. TODD: Thank you, Your Honor.

So to first just put this into Remmer context, I still think that that comment by the courtroom deputy would just be a classic, innocuous intervention. It's not as though the courtroom deputy articulated all the ways in which there is enhanced security. I think the specific comment, "This is

 federal court not state court," comes in reference to, you know, a video that went viral. And so, in context, it's just a statement to, again, move past the issue.

THE COURT: And if it is then what's the harm?

MR. TODD: Well, I think --

THE COURT: I guess you could say that to every innocuous comment, as if -- I mean, you never know.

MR. TODD: I think the harm is, as you say, it was a jovial conversation. And I think jurors being taken one by one in to be questioned by the judge is going to prompt a lot of --

THE COURT: Let me say one more thing because I didn't tell you everything I was thinking. What I was thinking of doing was a sort of hey, I've noticed you've all been paying attention to the testimony, you've been doing a great job as jurors. From time to time I check in with my juries, if necessary. To kind of let them know this is nothing -- there's no inquisition, no one is in trouble here, I just wanted to check in on something. I'm going to excuse you to the jury room, I'm going to call you in one at a time and just ask you a couple questions. I just ask that you don't talk about what we talk about in here, and then I'll excuse you to go home for the weekend. You know, kind of take the suspense. Because I agree, if you all of the sudden say Juror 1 --

MR. TODD: And I think you anticipated where I was going, which is I take the concern and, you know, I understand

 that the defense wants to preserve this for the record. And so if it's going to be done, I think doing it in a situation like you described, we're just trying to not give any indication that there's something out of the ordinary happening I think is essential.

THE COURT: Right. Because I don't think there is. I don't think this reaches the level of anything that the defense has cited, but I also understand that there was a communication. And this is, you know, very serious allegations and the paramount importance is a fair trial. And so if we can do it in a way that doesn't generate more problems, I'm sort of inclined to do it.

But I think some of what's happening here, it would be like every case; can we check in with the jury after the Government's case to see how they're thinking. I mean, if that's the standard then no. But I do think this conversation, given that there was reference to safety, clicks a little bit into the territory that we're talking about.

So, I'll give the -- do you want to add anything? I want to start on time.

MR. TODD: Can I have one more moment?

THE COURT: Sure. Yeah. Absolutely.

(Pause in the proceedings.)

MR. TODD: Can I ask a clarifying question, Your Honor?

THE COURT: Sure.

MR. TODD: In what you're anticipating, is it bringing them in and asking at a high level and innocuously, questions, or is it instructing or --

THE COURT: This is what I was thinking. Was to have what I said to you before. From time to time I check in as a group. I'm going to excuse you to the jury room now. I'm going to call you out one at a time and I'm going to ask you a couple questions and then I'm going to excuse you.

And the questions would be something to the effect of, I understand that there may have been a conversation that occurred in the jury room yesterday morning about courtroom or courthouse security. Did you participate in that conversation or did you overhear it? And if so, did that conversation -- does that impact your ability to be a fair and impartial juror? That is where I'm leaning, and that would be the sum and substance of it.

MR. TODD: Understood.

THE COURT: And you don't have to agree to it right now.

MR. TODD: No, no, no. I appreciate that.

THE COURT: That's where I'm leaning.

MR. TODD: For purposes of the record, I think we would just -- I'm not sure if Your Honor is making a Remmer finding, or sort of out of an abundance of caution, for the

 record, we would just ask that --

THE COURT: It's a bit of a hybrid. I think if it was a fully Remmered situation I would inquire of each person specifically what was said and what was heard, and where they were and what happened because that's what happens when you have a significant outside influence. And I don't think we have that here, but I'm inclined to do something that's sort of halfway. And it's in my discretion, obviously, so...

MR. TODD: I understand. I just think if that's the case, for purposes of the record, you know, I do think if there is a Remmer finding, that triggers a specific procedure.

THE COURT: It does. If it's a Remmer finding then the presumption of -- I think a presumption of an impartial jury sort of falls away and then the government has the burden of establishing that people remain fair and impartial. So I understand that.

MR. TODD: So it sounds like what you're articulating is finding that Remmer does not apply, but out of an abundance of caution engaging in --

THE COURT: That's exactly right.

MR. TODD: I --

THE COURT: There may be a problem after that. There may be something that happens after that.

MR. TODD: I mean, I'm not going to say that we concede, but I understand --

THE COURT: I'm not asking you to concede either. I completely understand your position which, I think, is it doesn't have to happen, but you want to be a part of the solution if I'm going to make something happen.

MR. TODD: Exactly.

THE COURT: And that's completely reasonable.

Why don't I let Ms. Garcon -- I've read your stuff so you don't have to add to what you submitted, but I'll give you a chance.

MS. GARCON: Yes. I just want to clarify. I think our argument is twofold. I think there's the argument in terms that this is sufficient for a Remmer hearing, but I think there's the other argument that essentially is asking that the Court -- asking for what the Court is suggesting. That because a juror has raised the safety concern based on the evidence, and it's not an external conversation, I think the cases that I cite are Smith, Thompson, I'll probably pronounce it wrong, Blitch --

THE COURT: Totally fine.

MS. GARCON: -- from the Seventh Circuit, are all cases where a juror only notes their safety concerns or their fears after hearing evidence or testimony in the case. There's no external conversation. And so in those cases, or in much of those cases the court does an inquiry as to whether or not they can remain fair and impartial. And I think that's what the Court is suggesting. So I think the Court can find that an

 inquiry is necessary under those kinds of cases.

THE COURT: Yeah, I mean, my personal view is there is nothing that has happened. The evidence has been what the evidence is, and it's difficult evidence and some would call -- some of the images may be gruesome. But one, your clients have done nothing but maintain themselves in an absolutely professional manner, as has counsel. There has been nothing that has happened in this courtroom that in any way gives me any pause that something's amiss or that people are nervous. And, frankly, the jurors seem to be behaving perfectly. But I do have some pause about that conversation and so that where I'm --

MS. GARCON: And I agree, Your Honor. I don't think when we look at the line of cases the jurors' fear and concerns kind of arise out of the same scenario. It's not the defendants conduct, it's not what they've seen the defendants or the lawyers do, or even the gallery do in the courtroom. It's -- in one of the cases it's a picture of a, you know, a gruesome picture that a juror noted made them feel uneasy. And one of the cases it's just information about the people involved being part of a certain gang and that --

THE COURT: Right.

MS. GARCON: -- they're fearful. So, you know, I think that's similar to, like, hearing the allegations in the case, which we all agree are serious, and having a sense of fear for their safety in raising a possible concern about their

 ability to stay impartial.

THE COURT: Well, I haven't decided anything yet. What I'm going to do is just wait until the next break, and then I would do whatever I'm going to do at the end of the day anyway because that would allow the jurors to just go home and -- so that's what I'm going to do.

I got your request to call somebody out of order, that's completely fine if you want to do that now. Anything else to raise?

MR. BUDLOW: No. I would just give the Court a heads up. This is the witness that Mr. Szekely referenced earlier who he'll be going beyond the scope; he might and I won't object on that basis.

THE COURT: Okay. I did not look at the case law and how far he can go, so I'll wait for you to maybe object. I'm not telling you to object.

MR. BUDLOW: I think we both agree that the issue, assuming the question's otherwise phrased properly, the issue will come to a head if there are specific instances of conduct that are inquired.

MR. SZEKELY: And to be clear, there's only one that I was planning to raise. And it's the incident where Mr. Smith reached out to the witness via a third party asking her to -- effectively saying we were together last night, right? Which was the day after the first abduction. The fact that he was

asking the witness --

THE COURT: And she's going to say no.

MR. SZEKELY: She's going to say he did reach out to me and I was not with him that night and I did not tell anyone else.

MR. BUDLOW: Through the third party.

MR. SZEKELY: Through the third party, yes.

THE COURT: You think that's what she's going to say.

MR. SZEKELY: That's what she told me. That's what she told the grand jury, Your Honor, so we'll see what she says here.

THE COURT: All right. Well, you can bring her in and we'll get the jury at the same time.

(Requested portion of transcript complete.)

(Requested portion of transcript begins.)

THE COURT: Do you mind shutting that door? Thanks.

I'm going to take five minutes, come back out and rule on the issue. And then if we conduct the inquiry, which I'm leaning toward, we'll do it right now, okay? See you in about five minutes.

THE CLERK: This Honorable Court is now in recess.

(RECESS was taken from 4:18-4:25 p.m.)

THE COURT: We're back on in 22-140. Counsel's here. Defendants are here except for Mr. Proctor. We'll wait for him.

While he's away Ms. Smith can answer this question. Is there any agreement on any -- and I didn't say you had to do this, but is there any agreement on any questions that might be posed between the parties?

MR. BUDLOW: We haven't had that level of detail.

THE COURT: Okay.

MR. BUDLOW: I guess what Your Honor proposed was acceptable, except it wasn't probably the complete --

THE COURT: Yeah.

MR. BUDLOW: -- I haven't heard yet.

THE COURT: Well, let me do this. I'll just read what I typed out for the ruling.

So this morning I received ECF 200 and 201 which is Mr. Hairston's motion and corrected motion for additional voir dire. I think Mr. Stanley is joining in that motion?

MR. PROCTOR: Yes, sir.

THE COURT: Okay. Gave the Government an opportunity to respond to it orally. We had sort of the truncated arguments at lunch. Mr. Hairston requests two courses of action: Additional voir dire to determine whether or not jurors remain fair and impartial; and second, a Remmer hearing.

Government opposes a Remmer hearing and worries that the questioning of jurors individually will cause alarm bells to go off, such they might believe something untoward is happening. I understand the concerns. I've reviewed the cases that everyone has cited, including Smith, Small, King and B-L-I-T-C-H among others. I'm going to grant the request for additional voir dire but deny the request for a Remmer hearing.

A defendant obviously has a constitutional right to an impartial, uncoerced jury. That's from United States versus Ridley, Seventh Circuit case. And the Sixth Amendment requires me to remain ever watchful to prevent prejudicial occurrences. And, therefore, must conduct voir dire in a manner that adequately identifies unqualified or potentially biased jurors. And that's from United States versus Smith, 919 F.3d 825, that's a Fourth Circuit case.

We have already conducted an unquestionably extensive voir dire. It had 52 questions over the course of two days; jurors were actually individually questioned. Mr. Hairston asked for a 201 for an inquiry of the jurors consistent with United States

 versus Smith, which is for essentially internal influences I'd say, and for a Remmer inquiry which is for external influences.

The Supreme Court has clearly distinguished between external jury influences on the one hand and internal jury influences on the other. That's from Wolf versus Johnson, a Fourth Circuit case in 2009.

Under clearly established Supreme Court law, influence on a jury's deliberative process is external if it is either extraneous prejudicial information, i.e., information that was not admitted into evidence but nevertheless bears on a fact at issue in the case; or if it is an outside influence upon the partiality of the jury such as private communication, contact, or tampering with a juror. It's from the same case. It's quoting Robinson versus Polk, another Fourth Circuit case.

So this distinction between internal and external influences is critical, because unlike external influences which necessitate a thorough judicial inquiry, no such obligation is imposed with regard to an internal jury influence. And that's a direct quote also from Wolf versus Johnson.

So this isn't really a constitutional issue, and we'll get to it in a second. But to begin, I find the allegations of influence are internal at best. And to the extent there is any external communication from the courtroom deputy in the response to the jurors' question, such communications were innocuous and not prejudicial.

And there's a case, Garcia versus Andrews, that talks about a juror's own subjective fear not being extrinsic. That's a Sixth Circuit case from 2007. There's United States versus Thornton, a Third circuit case from 1993 finding that jurors' general apprehensiveness about their safety did not indicate extraneous influences.

Even if the statement, this federal court is not state court, we have more security here, that states an obvious truth. It doesn't state anything the jurors can't directly observe. And, quite frankly, the context of the conversation at that point is really about the Las Vegas incident that we talked about. So, it's a clear fact that we have more security here.

I mean, the jurors come through the front door of the courthouse, they go through the security screening like others who enter the courthouse. So I agree with the Government that this generalized statement made was just trying to blandly move the conversation along and it's absolutely nothing like the external communication in Parker versus Gladden where the external factor was a bailiff saying oh, that wicked fellow is guilty. We don't have anything like that here at all.

Similarly, the jurors' conversations of television shows such as Law & Order and CSI, as well as the situation in Las Vegas do not constitute an external influence. I will note, as I had before, that these things are often targeted and voir dire on the front end. I was very lenient in allowing 52 questions,

and some of them appeared repetitive once asked. In fact, many jurors said didn't I already get asked this.

Nevertheless, given that there was questions as to why the defendants are potentially in the conversation of the Las Vegas incident as to why the defendants here are not handcuffed or in shackles, and given that the question indicates that at least one juror maybe believed that the defendants should be restrained or are restrained, I'm sensitive to the request for additional inquiry.

It's also clear in this case the jurors' question about safety was -- you know, came close in time to some testimony so it's possible there's an issue there. But generally that -- concerns about jurors' personal safety really never are considered to be external influence. At least there's cases out of Seventh, Third, and Sixth Circuit that say that. So I agree these are generalized and innocuous, I don't think that they are external so I deny the Remmer hearing.

But the question that I posed all day and sort of wrestled with is I'm not required to do an inquiry but I do think that it's probably wise to do it in this case. This will be different than a Remmer hearing because it concerns internal communications. The jury is still presumptively impartial and the Fourth Circuit has quote, "Encouraged district courts in similar situations to conduct such an inquiry."

This kind of inquiry, I'm going to call it a Smith inquiry

because it derives from United States versus Smith. Now, of course in Smith the trial evidence highlighted the gangs "violent nature" which caused "Anxiety for some members of the jury."

So one member of that jury informed the court that she was afraid about retaliation, and three other jurors heard her expressing that fear. So I've looked at transcripts of this additional voir dire in exchange. There were three questions asked, they were very broad. Effectively, has anything occurred since we last spoke, meaning in voir dire, that would cause you to change your answer to the question about being fair and impartial?

The second question was: Since you began to serve on the jury has anything been said or overheard by you in the jury room that would affect your ability to be a fair and impartial juror?

And the third question is: You remember my general instruction, that during the trial, until the case is given to you for deliberation, you shouldn't discuss the case and the evidence presented to you, not with anyone.

These are the questions that were posed in Smith. I discussed earlier with you all how general or specific to be in the questioning, and I concluded that asking about the specific conversations may taint the jury pool a little bit further. This is kind of going to the Government's argument, but really my own observation that I don't want to plant seeds in the head

of the jurors that there's something wrong or something amiss.

So, I'm thinking about this in the window of -- looking through the window of *Smith*. In *Smith* the defendants claim the district court's questioning of the jurors was inadequate because it didn't ask each juror expressly about the juror who expressed fears and their discussions with the other jurors. But the Fourth Circuit held these were appropriate questions. And in evaluating their responses the court in *Smith* considered the jurors' reactions and, where necessary, followed up. Ultimately, the Fourth Circuit instructed that district courts are encouraged to take a direct approach to detect bias.

I think this situation is similar to *Smith*. I agree it would be best to ask a few additional voir dire questions. And to be clear, it's not a *Remmer* hearing, there's still a presumption of impartiality. And the goal is really to walk the line between detecting bias and avoiding inadvertently creating bias.

My plan is to address the jury as a group to say something to the effect of -- well, I'll read it in a second. And let them know, you know, that from time to time I check in, to try to make it less obvious that something's not normal. I'm going to say that I essentially, normally, address the jury as a group, and given that voir dire was done on a one on one basis, I think starting out as a group and then shifting to one on one would reduce some of the suspicion surrounding why there's an

inquiry. I'm going to try to anesthetize any red flags as much as I can with my demeanor and my tone.

In terms of what I'm going to ask, I'm not going to ask the precise questions in Smith as I think that's too broad and is going to invite speculation. And the case law is clear that I have discretion on how to conduct this or how to do this.

With that in mind, what I'm essentially, you know, trying to get at is whether the content of this conversation that may have happened regarding courthouse security and courtroom security has made the jurors so fearful that they can't be impartial.

So what I was going to do -- and I'm just going to throw it out and then I'll let you briefly respond -- is I say something to the effect of: I noticed you've been taking notes, paying close attention to the testimony and exhibits. I think the trial has been conducted in an orderly manner and will continue to be the case when you return next week. From time to time I like to check in with my juries to see how things are going or to ask specific questions about something that I might want to follow-up on. Since we're running a little bit of ahead of schedule I'm going to do that now, and then afterwards I will excuse you for the weekend. The only thing I ask of you is not to discuss -- we're going to do it one on one but I ask you not to discuss with any juror what we discuss in here.

And the questions that will be posed is really, it is my

understanding that there may have been a conversation about courtroom security or courthouse security that occurred yesterday morning in the jury room. Did you participate or hear that conversation?

And did anything you heard or said in that conversation affect your ability to be fair and impartial?

That's as far as I'm willing to go. I think that targets the issue and doesn't plant any seeds.

Government, what is your thought?

MR. TODD: That's sounds appropriate, Your Honor.

THE COURT: Okay. Defense?

MS. GARCON: That's fine, Your Honor.

MR. PROCTOR: The only thing, Your Honor, for all we know they've been 18 other discussions, so I would just ask you to delete the words "yesterday morning."

THE COURT: Well, no, that's my point. I'm not trying to do a general inquiry. I'm not trying to open it up so the jurors get to tell me everything that they've talked about. I'm trying to focus in on that one incident that was brought to our attention.

MR. PROCTOR: Why can't we just say discussions about courthouse security?

THE COURT: Because the only information that we have is that courthouse security discussion happened yesterday morning. This is only about that one incident. And I'm not

opening it up to have the jurors tell me about everything else they talked about. And we have no basis to think that they have. So I'm including that, quite frankly, for the purpose of zeroing in on the actual incident, the only thing we have any evidence for, otherwise we're just sort of fishing.

I mean, will they make the distinction? Who knows. Maybe. If there were more conversations maybe they'll bring it up. But I don't see any reason to do that because there's nothing before me, at all, that that's an issue.

The only thing I have to say, and I'm going to repeat it, this is really being said to Mr. Hairston and Mr. Stanley. Is by raising these issues again it's possible that it plants seeds in jurors' minds and they go back and think about it. And that's a risk that the Government has identified. And I'm repeating it now because, as much as I'm trying to target this, that's always a risk. And with that risk in mind I will do it, but I'll give you the last chance if you have anything else to add.

MR. PROCTOR: Without waiving our request for a Remmer hearing I have nothing to add.

THE COURT: Okay.

MS. GARCON: Same.

THE COURT: Okay. Well, let's get everybody out here then.

(Jury entered the courtroom at 4:40 p.m.)

THE COURT: All right. Everybody can be seated. We are actually running a little bit ahead of schedule, which is great. So I've got to say, I noticed that everyone has been taking notes, paying close attention to the testimony and the exhibits. And I think the trial has been conducted in an orderly manner and it's going to continue to be conducted that way when you return next week.

From time to time I like to check in with my juries one on, to follow-up on anything I feel like I need to follow-up on. And since we have a little bit of extra time I want to do that right now before I excuse you for -- well, it's not the weekend but it's the jury weekend because we don't sit tomorrow.

So what I'm going to do, is in a second I'm going to have you go back in the jury room and then I'm going to call you out one by one with a couple quick catchup, follow-ups, and then have you go back into the jury room. And those catch-ups will be very similar to what we did on Monday and Tuesday; a sort of voir dire, just a couple quick questions, and then I'll send you back in the room. And then when we are done I'll bring you back out here and then excuse you.

So there will be a little bit of the calisthenics back and forth but it shouldn't take too long. And what we can do is I'll have the courtroom deputy call you out here one by one. The only thing is, whatever we talk about in here one on one, just like back then, don't talk about it with each other. Does

that make sense?

All right. So head back in and I'll call you out one by one.

(Jury exited the courtroom at 4:42 p.m.)

THE COURT: You can be seated. We'll close the door.

Normally I'd seal the courtroom for this but I think everyone here is part of the team. Yeah, court staff. And so I just ask the CSO, if anybody walks in -- I guess you could just lock everybody out. Go ahead. Yeah. So we're sealing this because it's a voir dire-type nature and it may be prying into personal feelings and thoughts and all of that.

So why don't you bring out Juror Number 1 and they can just sit in the end seat.

THE CLERK: This seat?

THE COURT: That's fine.

MR. PROCTOR: Judge, can you have them sit a little bit further up?

THE COURT: Maybe two or three over.

(Juror No. 1 entered the courtroom.)

THE COURT: All right. I'm just checking in briefly because I heard there may have been a conversation about courthouse security or courtroom security yesterday morning, and I'm asking if you participated in or heard that conversation.

JUROR NO. 1: I didn't participate, I did hear. There was some jurors who were concerned for their security.

THE COURT: Okay. And is anything that you heard in that conversation, has that impacted your ability to be impartial?

JUROR NO. 1: No.

THE COURT: Okay. All right. Well, you can head back in.

JUROR NO. 1: I'm not allowed to ask?

THE COURT: No more back and forth. It's just like court. Thank you.

(Juror No. 1 dismissed. Juror No. 2 entered.)

THE COURT: Come on up. Have a seat.

So I'm asking just a couple quick questions. I understand there may have been a conversation yesterday about courthouse security or courtroom security, and I want to know if you heard or participated in that conversation.

JUROR NO. 2: Heard possibly.

THE COURT: Anything you heard in that conversation, does that affect your ability to be fair and impartial?

JUROR NO. 2: Absolutely not.

THE COURT: Okay. You can head back. Thanks.

(Juror No. 2 dismissed. Juror No. 3 entered.)

THE COURT: Come on in. All right. I'm just asking briefly --

JUROR NO. 3: Can I sit?

THE COURT: You can sit. I'm sorry, I should have

told you. It's a new seat, too. Is it any better?

JUROR NO. 3: No, I like my rocking chair.

THE COURT: I understand that yesterday there may have been a conversation about courtroom security or courthouse security, and I wanted to you ask you if you heard or participated in that conversation.

JUROR NO. 3: Nope.

THE COURT: Okay. So you didn't hear it?

JUROR NO. 3: I heard it but I didn't comment.

THE COURT: Well, did anything you hear impact your ability to be fair and impartial?

JUROR NO. 3: No.

THE COURT: Okay. Great. You can go back.

JUROR NO. 3: Thank you.

(Juror No. 3 dismissed. Juror No. 4 entered.)

THE COURT: Very close to your seat, but see if you like it better. You can have a seat.

JUROR NO. 4: They all look the same.

THE COURT: So I'm asking just a brief question. Which is yesterday there may have been a conversation about courthouse security or courtroom security, and I just wanted to know if you heard it or participated in it.

JUROR NO. 4: Courthouse security. I heard it, I did not participate.

THE COURT: Okay. So did anything you hear, did that

impact your ability to be fair and impartial?

JUROR NO. 4: No.

THE COURT: Okay. All right. I'll talk to you in a little bit.

(Juror No. 4 dismissed. Juror No. 5 entered.)

THE COURT: Come on out. You can go to number three. You normally sit -- yeah. You can go wherever you want. You don't have to go all the way over. Go ahead, try one out.

So I'm calling back to ask like, very briefly, I understand there may have been a conversation yesterday about courthouse security or courtroom security, and I just wanted to ask if you heard or participated in the conversation.

JUROR NO. 5: I don't think so.

THE COURT: You didn't hear it, didn't participate it?

JUROR NO. 5: No.

THE COURT: So your ability to be fair and impartial is the same as it was when we started?

JUROR NO. 5: Uh-huh.

THE COURT: Jut for the record, yes?

JUROR NO. 5: Yes.

THE COURT: Great. Good to see you. I'll call you back out in a little bit.

JUROR NO. 5: Thank you.

(Juror No. 5 dismissed. Juror No. 6 entered.)

THE COURT: Hey, how are you doing?

JUROR NO. 6: Good. How are you?

THE COURT: That is your seat, right?

JUROR NO. 6: Yes.

THE COURT: You're used to it.

So I was calling you out to just briefly ask, I understand yesterday there may have been a conversation about courthouse security or courtroom security, and I just want to know if you heard it or participated in it.

JUROR NO. 6: I did not participate.

THE COURT: But you heard it?

JUROR NO. 6: What do you mean by like --

THE COURT: Well, ultimate question is this: Did anything you hear in that conversation impact your ability to be fair and impartial?

JUROR NO. 6: No.

THE COURT: Okay. You can head back in.

(Juror No. 6 dismissed. Juror No. 7 entered.)

THE COURT: You can go to your seat if you want.

JUROR NO. 7: This is my seat.

THE COURT: Or you can try another one out if you want to. It's up to you.

Briefly, I understand yesterday there may have been a conversation about courtroom security or courthouse security, and I'm inquiring whether you heard about -- heard that conversation or participated in it. That's my first question.

JUROR NO. 7: I heard it. I did not participate.

THE COURT: Did anything you hear and heard in that conversation, does that impact your ability to be fair and impartial?

JUROR NO. 7: No.

THE COURT: Okay. Great. You can head back.

JUROR NO. 7: Okay.

(Juror No. 7 dismissed. Juror No. 8 entered.)

THE COURT: All right. I'm briefly following up -- you like that chair better?

JUROR NO. 8: Nah.

THE COURT: Okay. I understand yesterday there may have been a conversation about courtroom security or courthouse security. I just want to know if you heard or participated in that conversation.

JUROR NO. 8: I did not.

THE COURT: You didn't hear it?

JUROR NO. 8: I heard it but I did not participate.

THE COURT: And did anything you heard in that conversation, has that impacted your ability to be fair and impartial as a juror?

JUROR NO. 8: No.

THE COURT: Okay. You can head back.

(Juror No. 8 dismissed. Juror No. 9 entered.)

THE COURT: Hey, come on up.

JUROR NO. 9: Hi.

THE COURT: You can get in the front row seat now. You can sit anywhere. You're all right.

Just checking in briefly. I understand there may have been a conversation yesterday about courthouse security or courtroom security, and I just want to know if you heard it or participated in it. That's question one.

JUROR NO. 9: No.

THE COURT: So you didn't hear it or participate in it?

JUROR NO. 9: No.

THE COURT: So your ability to be fair and impartial, as you said on Monday or Tuesday whenever we talked you could be a fair and impartial juror. Do you still feel like you can be?

JUROR NO. 9: Yes.

THE COURT: Great. You can head back out.

JUROR NO. 9: All right.

(Juror No. 9 dismissed. Juror No. 10 entered.)

THE COURT: All right. Have a seat. Briefly -- I was going to ask you something else and I totally forgot what it was. I think I was wondering if you were going to keep the tie for the whole trial. And I thought I don't have enough ties, and I like that you went casual. It's still very appropriate.

So I'm asking briefly, I understand there may have been a conversation yesterday about courthouse security or courtroom

security, and I was wondering whether you heard that conversation or took part in that conversation.

JUROR NO. 10: No.

THE COURT: So didn't hear it?

JUROR NO. 10: I think I heard something but...

THE COURT: But did anything you hear -- did anything you heard yesterday, did that impact your ability to be a fair and impartial juror?

JUROR NO. 10: No.

THE COURT: Great, you can head back. And you really don't have to wear a tie. I didn't mean to --

JUROR NO. 10: I might wear one next week.

THE COURT: We'll try to coordinate.

JUROR NO. 10: I'm busy in the morning.

THE COURT: All right. Next juror.

(Juror No. 10 dismissed. Juror No. 11 entered.)

THE COURT: You can go in the front row now.

JUROR NO. 11: Okay.

THE COURT: One, I love the bright colors. It's been jolting me up a lot today. That's great.

JUROR NO. 11: Thank you.

THE COURT: I'm briefly asking whether yesterday you heard or participated in a conversation about courthouse security or courtroom security.

JUROR NO. 11: No.

THE COURT: You didn't hear it?

JUROR NO. 11: No.

THE COURT: Okay. So you -- and you -- when you went through voir dire you indicated you could be fair and impartial. Do you still feel like you can be fair and impartial?

JUROR NO. 11: Yes.

THE COURT: Okay. Great. You can head back.

(Juror No. 11 dismissed. Juror No. 12 entered.)

THE COURT: Hey, come on in.

JUROR NO. 12: Hello.

THE COURT: How do you like your new seat?

JUROR NO. 12: I like it.

THE COURT: Okay. So I'm briefly asking -- I understand yesterday there may have been a conversation about courthouse security or courtroom security, and I want to know if you heard or participated in that conversation.

JUROR NO. 12: I don't think I did.

THE COURT: Okay. So nothing you heard yesterday has impacted your ability to be a fair and impartial juror?

JUROR NO. 12: Not at all.

THE COURT: All right. You can head back.

JUROR NO. 12: Thanks.

(Juror No. 12 dismissed. Alternate Juror No. 1 entered.)

THE COURT: Come on in. You can sit up front now, see if you like it. Have a seat.

So I'm briefly asking, yesterday there may have been a conversation in the jury room about courtroom security or courthouse security, and I was asking if you had heard or participated in that conversation.

ALTERNATE JUROR NO. 1: I was aware of it.

THE COURT: Did anything you heard in that conversation, did that impact your ability to be fair and impartial?

ALTERNATE JUROR NO. 1: Uh-uh.

THE COURT: No?

ALTERNATE JUROR NO. 1: No.

THE COURT: Okay. All right. Well, you can head in the back. Good to see you. Thanks.

ALTERNATE JUROR NO. 1: You're welcome.

(Alternate Juror No. 1 was dismissed.)

THE COURT: All right. There's no one else back there.

So the defenses' request for a more probing inquiry is on the record and noted, but I'm satisfied that the jurors remain fair and impartial. And so I think this episode is closed. But all of your objections are noted. Your -- I really didn't intend for you to have to write something all night, I was trying to make it so you could maybe get someone else to write during the day, but I'm up, too, so makes two of us, but I appreciate the effort.

So for Monday, what is Monday looking like?

MR. BUDLOW: Starting Monday we'll move to sort of two new sections. The first would be some evidence related to Mr. Hairston's use of Target Telephone 14 and related. So that would be -- and I'm not swearing to this order, but generally Officer Higgins, a Baltimore County officer, Angela Benoit is a civilian. And then we'll move from there into evidence relating to the third abduction, April Keel, we heard some of that today; her fiancé. And then if we get to it the U.S. Fuel which you're very familiar with.

THE COURT: So maybe Monday at some point you guys can finalize your jail call.

MR. SZEKELY: That's what I'm hoping to take care of this weekend. Can I raise a question about Monday though?

THE COURT: Sure.

MR. SZEKELY: So I'm gonna sort of renew our request to start the trial day at 9:30. So at the end of day the marshals --

THE COURT: I'll start Monday at 9:30, let's go with that. Because that was my plan, I just wanted to see if that was going to interfere too much.

MR. SZEKELY: We just had a little bit of difficulty checking with our clients.

THE COURT: Sure. I'll start Monday at 9:30, partially because they kind of thought they were leaving early

and that was a cruel, cruel trick.

So if there's anything else, I'm going to bring the jury in and excuse them, hold everyone, and then I'll -- that's it really, unless there's anything else.

So you can open the courtroom again and get the jury back out here. I am going to tell them to take it easy this weekend. We're down to 13, I don't need anybody bungee jumping this weekend or anything like that.

MS. GARCON: And, Your Honor, I just want to note on the record --

THE COURT: Wait, is it anything about this?

MS. GARCON: Yeah.

THE COURT: Can we do it later?

MS. GARCON: Okay.

THE COURT: Yeah, we'll do it after they leave.

(Jury entered the courtroom at 4:57 p.m.)

THE COURT: All right. So I kind of implied you could leave early, which it was really cruel because it's really only three minutes early. But here's what I can do. Monday I'll have you come in at 9:30 and we'll start soon after that. Real soon. You can be seated. Real soon after that.

So as you know, we have one alternate. Take it easy this weekend. This is not the weekend to start bungee jumping or ATV riding or anything like that. Just take it easy. I want to see you back here Monday at 9:30. Sound good?

Okay. Well, have a wonderful weekend. I'm going to hold everyone; you can exit and I'll see you then. Remember this weekend, this is when the urge to start Googling stuff, don't do it. No research, okay? No conversation, no research.

(Jury exited the courtroom at 4:58 p.m.)

THE COURT: All right. Ms. Garcon, you wanted to put something on the record?

MS. GARCON: Yes.

THE COURT: Sure.

MS. GARCON: Your Honor, I just wanted to note for the record, I know the Court did do the inquiry of each individual juror. I find it interesting that no juror fessed up to being the one that had the conversation. So I would just note that for the record. They all or some of them noted hearing about the conversation but none noted participating in the conversation. I know we lost one juror since that conversation so I don't know.

THE COURT: Yeah.

MS. GARCON: So I just -- and, obviously, none of the parties know who that juror is, so I just want to note for the record that.

THE COURT: Yeah. Well, I think that your objection is noted and I guess it's like a request for like a further probing of the incident?

MS. GARCON: And just -- yeah, noting that on the

record.

THE COURT: All right. Well, I mean, the biggest and most important question is really the second question. And I felt like to a member there was no issues and no hesitation and I didn't have any issues with anyone's follow-ups so...

MR. TODD: Your Honor, can I just note for the record?

THE COURT: Sure.

MR. TODD: Since this was not a situation where the Remmer motion was granted, the presumption is that the jurors remain unbiased and --

THE COURT: Sure. And, I mean, I've been watching them very closely and they -- as we all do, even you. I think during Special Agent Fowler's testimony there was a little dip, cell tower evidence. He does his best but it's hard. But other than that, and even during that I saw them taking notes. And so anyway, the cell phone call thing you'll deal with over the weekend maybe, or Monday. We're not going to get to it until later.

I commend everybody on a really great week. It's very interesting, you both are doing an excellent job. And obviously I'm pushing everybody to have another witness, and I appreciate the Government is doing that, but I appreciate the defendants' ability to immediately pivot to a new cross and also use all the tech. And, of course, I said it before, but Mr. Hairston and Mr. Stanley have been excellent, as has our staff. So great

first week. We'll be back 9:30 Monday and be safe this weekend.

MR. PROCTOR: Judge, I'm assuming you have hearings tomorrow and we should clear everything?

THE COURT: Yeah, go ahead and do it. Actually, it may not be me, but sometimes other people are using the courtroom tomorrow. And so yeah, go ahead and clear it out; take your stuff with you. I'm concerned that I can't control the room tomorrow so you may want to take all your stuff. Okay?

MR. PROCTOR: Yes, sir.

THE COURT: Have a good weekend.

(The proceedings concluded at 5:01 p.m.)

(Requested portion of transcript complete.)

CERTIFICATE OF OFFICIAL REPORTER

I, Kassandra L. McPherson, Registered Professional Reporter, in and for the United States District Court for the District of Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 26th day of August 2024.

-S-

KASSANDRA L. MCPHERSON, RPR
FEDERAL OFFICIAL COURT REPORTER

**1**

**1** [13] - 8:23, 27:12, 27:19, 27:24, 28:4, 28:7, 28:10, 35:23, 36:5, 36:9, 36:11, 36:14, 36:15
**10** [7] - 33:18, 34:3, 34:5, 34:9, 34:12, 34:14, 34:16
**101** [1] - 1:24
**11** [7] - 34:16, 34:18, 34:21, 34:25, 35:2, 35:6, 35:8
**12** [7] - 35:8, 35:10, 35:12, 35:17, 35:20, 35:22, 35:23
**13** [1] - 38:7
**14** [1] - 37:4
**16** [1] - 1:8
**18** [1] - 24:14
**1993** [1] - 19:4

**2**

**2** [4] - 28:10, 28:16, 28:19, 28:21
**200** [1] - 16:23
**2007** [2] - 4:1, 19:3
**2009** [1] - 18:6
**201** [4] - 2:7, 2:8, 16:23, 17:25
**2024** [3] - 1:8, 5:3, 41:20
**21201** [1] - 1:24
**22-140** [2] - 2:2, 16:9
**26th** [1] - 41:20
**28** [1] - 41:17

**3**

**3** [8] - 28:21, 28:24, 29:2, 29:7, 29:9, 29:12, 29:14, 29:15
**370** [1] - 3:25
**3A** [1] - 1:9

**4**

**4** [5] - 29:15, 29:18, 29:23, 30:2, 30:5
**410** [1] - 1:25
**488** [1] - 3:25
**4:18-4:25** [1] - 16:8
**4:40** [1] - 25:25
**4:42** [1] - 27:4
**4:57** [1] - 38:16
**4:58** [1] - 39:5
**4th** [1] - 1:24

**5**

**5** [7] - 30:5, 30:13, 30:15, 30:18, 30:20, 30:23, 30:24
**505** [1] - 6:25
**52** [2] - 17:23, 19:25
**5:01** [1] - 41:11

**6**

**6** [7] - 30:24, 31:1, 31:3, 31:9, 31:11, 31:15, 31:17
**627** [1] - 3:21
**641** [1] - 3:21
**650** [1] - 3:22

**7**

**7** [6] - 31:17, 31:19, 32:1, 32:5, 32:7, 32:8
**753** [1] - 41:17

**8**

**8** [6] - 32:8, 32:11, 32:16, 32:18, 32:22, 32:24
**825** [1] - 17:20

**9**

**9** [7] - 32:24, 33:1, 33:8, 33:11, 33:15, 33:17, 33:18
**919** [1] - 17:20
**962-4544** [1] - 1:25
**9:30** [6] - 37:17, 37:19, 37:24, 38:20, 38:25, 41:1

**A**

**abduction** [2] - 14:25, 37:8
**ability** [18] - 6:20, 10:15, 14:1, 21:15, 24:6, 28:2, 28:18, 29:11, 30:1, 30:16, 31:13, 32:3, 32:20, 33:12, 34:7, 35:19, 36:7, 40:23
**above-entitled** [1] - 41:18
**absolutely** [4] - 9:22, 13:6, 19:17, 28:19
**abundance** [2] - 10:25, 11:18
**acceptable** [1] - 16:18
**action** [1] - 17:4
**actual** [1] - 25:4
**add** [4] - 9:19, 12:8, 25:18, 25:20
**additional** [6] - 16:24, 17:5, 17:12, 20:9, 21:8, 22:13
**address** [3] - 4:18, 22:18, 22:22
**addressing** [1] - 4:21
**adequately** [1] - 17:19
**admitted** [1] - 18:10
**affect** [3] - 21:15, 24:6, 28:18
**afoot** [1] - 7:1
**afraid** [2] - 4:7, 21:6
**afterwards** [1] - 23:21
**Agent** [1] - 40:13
**agree** [9] - 6:4, 8:22, 10:19, 13:12, 13:24, 14:17, 19:15, 20:15, 22:12
**agreement** [3] - 2:11, 16:12, 16:13
**ahead** [6] - 23:20, 26:2, 27:9, 30:8, 41:4, 41:6
**aided** [1] - 1:22
**alarm** [1] - 17:8
**allegations** [3] - 9:9, 13:23, 18:21
**ALLEN** [1] - 1:6
**alleviate** [1] - 3:4
**allow** [1] - 14:5
**allowed** [1] - 28:7
**allowing** [1] - 19:25
**Alternate** [2] - 35:23, 36:15
**alternate** [2] - 5:19, 38:22
**ALTERNATE** [4] - 36:5, 36:9, 36:11, 36:14
**Amendment** [1] - 17:16
**AMERICA** [1] - 1:4
**amiss** [2] - 13:9, 22:1
**Andrew** [1] - 1:18
**Andrews** [2] - 3:25, 19:1
**anesthetize** [1] - 23:1
**Angela** [1] - 37:6
**answer** [2] - 16:11, 21:11
**anticipated** [1] - 8:24
**anticipating** [1] - 10:2
**Anxiety** [1] - 21:3
**anyway** [2] - 14:4, 40:16
**appear** [1] - 4:10
**appeared** [1] - 20:1
**applicable** [1] - 2:15
**applies** [4] - 5:16, 6:1, 6:8, 6:11
**apply** [1] - 11:18
**appreciate** [4] - 10:21, 36:25, 40:21, 40:22
**apprehensiveness** [1] - 19:5
**approach** [1] - 22:11
**approached** [1] - 4:6
**appropriate** [3] - 22:7, 24:10, 33:23
**appropriately** [1] - 3:2
**April** [1] - 37:8
**argument** [4] - 12:11, 12:13, 21:24
**arguments** [1] - 17:3
**arise** [2] - 3:10, 13:14
**arm** [2] - 3:1, 5:11
**arose** [1] - 2:21
**articulated** [1] - 7:24
**articulating** [1] - 11:17
**Assistant** [1] - 1:15
**assuming** [3] - 7:6, 14:18, 41:2
**attack** [1] - 6:10
**attempt** [1] - 3:4
**attention** [4] - 8:14, 23:15, 24:20, 26:4
**attentively** [2] - 3:1, 3:8
**Attorney** [1] - 1:15
**ATV** [1] - 38:23
**August** [1] - 41:20
**avoiding** [1] - 22:16
**aware** [1] - 36:5

**B**

**BAH-22-0140** [1] - 1:5
**bailiff** [1] - 19:19
**Baltimore** [3] - 1:9, 1:24, 37:6
**based** [3] - 2:25, 4:9, 12:15
**basis** [3] - 14:13, 22:23, 25:2
**bears** [1] - 18:10
**BEFORE** [1] - 1:12
**began** [1] - 21:13
**begin** [1] - 18:21
**begins** [2] - 2:1, 16:1
**Behalf** [2] - 1:13, 1:17
**behaving** [1] - 13:10
**bells** [1] - 17:8
**Benoit** [1] - 37:6
**best** [3] - 18:22, 22:13, 40:14
**better** [3] - 29:1, 29:17, 32:10
**between** [6] - 2:16, 2:23, 16:14, 18:3, 18:15, 22:16
**beyond** [1] - 14:12
**bias** [4] - 4:22, 22:11, 22:16, 22:17
**biased** [1] - 17:19
**biggest** [1] - 40:2
**bit** [12] - 5:13, 9:17, 11:2, 21:23, 23:20, 26:2, 26:10, 26:21, 27:17, 30:4, 30:22, 37:22
**bland** [1] - 5:13
**blandly** [2] - 3:3, 19:16
**Blitch** [1] - 12:17
**BLITCH** [1] - 17:11
**board** [1] - 6:11
**box** [1] - 6:10
**break** [1] - 14:3
**BRENDAN** [1] - 1:12
**bribery** [1] - 2:17
**brief** [1] - 29:19
**briefly** [13] - 23:13, 27:20, 28:23, 30:9, 31:5, 31:22, 32:9, 33:4, 33:19, 33:24, 34:22, 35:13, 36:1
**bright** [1] - 34:19
**bring** [5] - 15:12, 25:7, 26:19, 27:12, 38:2
**bringing** [1] - 10:2
**broad** [2] - 21:9, 23:4
**brought** [1] - 24:19
**BUDLOW** [7] - 14:10, 14:17, 15:6, 16:15, 16:17, 16:20, 37:2
**Budlow** [1] - 1:14
**bungee** [2] - 38:7, 38:23
**burden** [1] - 11:14
**busy** [1] - 34:14

**but..** [1] - 34:5

C

**calisthenics** [1] - 26:21
**care** [1] - 37:13
**CASE** [1] - 1:5
**case** [24] - 5:3, 5:8, 5:21, 9:14, 9:15, 11:10, 12:21, 13:24, 14:14, 17:16, 17:21, 18:6, 18:11, 18:13, 18:14, 19:1, 19:3, 19:4, 20:10, 20:20, 21:17, 21:18, 23:5, 23:17
**cases** [11] - 3:12, 12:16, 12:20, 12:22, 12:23, 13:1, 13:13, 13:17, 13:19, 17:10, 20:14
**casual** [1] - 33:23
**catch** [1] - 26:16
**catch-ups** [1] - 26:16
**catchup** [1] - 26:15
**caused** [1] - 21:3
**caution** [2] - 10:25, 11:19
**cell** [2] - 40:14, 40:16
**certain** [1] - 13:20
**CERTIFICATE** [1] - 41:15
**certify** [1] - 41:17
**chair** [2] - 29:2, 32:10
**chance** [4] - 2:4, 2:9, 12:9, 25:17
**change** [1] - 21:11
**check** [7] - 8:15, 8:18, 9:14, 10:6, 22:20, 23:18, 26:8
**checking** [3] - 27:20, 33:4, 37:23
**Circuit** [16] - 3:21, 4:1, 4:15, 5:2, 5:3, 6:23, 12:19, 17:16, 17:21, 18:6, 18:14, 19:3, 20:15, 20:23, 22:7, 22:10
**circuit** [1] - 19:4
**cite** [1] - 12:16
**cited** [4] - 3:13, 9:8, 17:11
**civilian** [1] - 37:7
**claim** [1] - 22:3
**clarify** [1] - 12:10
**clarifying** [1] - 9:24
**classic** [2] - 2:17, 7:23
**clear** [9] - 5:4, 5:21, 14:21, 19:12, 20:10, 22:14, 23:5, 41:3, 41:6
**clearly** [3] - 4:20, 18:3, 18:7
**CLERK** [2] - 16:7, 27:14
**clicks** [1] - 9:17
**clients** [2] - 13:5, 37:23
**close** [5] - 20:11, 23:15, 26:4, 27:5, 29:16
**closed** [1] - 36:20
**closely** [1] - 40:12
**colors** [1] - 34:19
**commend** [1] - 40:19
**comment** [5] - 6:13, 7:22, 7:25, 8:7, 29:9
**communication** [6] - 2:19, 3:18, 9:8, 18:12, 18:23, 19:18
**communications** [3] - 2:16, 18:24, 20:22
**complete** [3] - 15:14, 16:18, 41:12
**completely** [3] - 12:2, 12:6, 14:8
**Computer** [1] - 1:22
**Computer-aided** [1] - 1:22
**concede** [2] - 11:25, 12:1
**conceivable** [1] - 4:22
**concern** [6] - 3:4, 4:18, 7:10, 8:25, 12:15, 13:25
**concerned** [2] - 27:25, 41:7
**concerns** [8] - 3:10, 3:20, 4:20, 12:20, 13:13, 17:10, 20:13, 20:21
**concluded** [2] - 21:22, 41:11
**conduct** [6] - 13:15, 14:19, 16:4, 17:18, 20:24, 23:6
**conducted** [4] - 17:22, 23:16, 26:5, 26:6
**Conference** [1] - 41:19
**conformance** [1] - 41:18
**consider** [1] - 5:22
**considered** [2] - 20:14, 22:8
**consistent** [1] - 17:25
**constitute** [2] - 3:5, 19:23
**constitutional** [2] - 17:14, 18:20
**contact** [6] - 2:23, 4:13, 5:4, 5:7, 18:12
**contacts** [1] - 2:16
**content** [1] - 23:8
**context** [3] - 7:21, 8:2, 19:10
**continue** [2] - 23:16, 26:6
**control** [1] - 41:7
**conversation** [56] - 3:3, 5:13, 6:16, 7:3, 7:5, 7:7, 7:16, 8:9, 9:16, 10:11, 10:13, 10:14, 12:16, 12:22, 13:11, 19:10, 19:17, 20:4, 23:8, 24:1, 24:4, 24:5, 27:21, 27:23, 28:2, 28:13, 28:15, 28:17, 29:4, 29:6, 29:20, 30:10, 30:12, 31:6, 31:13, 31:23, 31:25, 32:3, 32:13, 32:15, 32:20, 33:5, 33:25, 34:2, 34:23, 35:14, 35:16, 36:2, 36:4, 36:7, 39:4, 39:13, 39:15, 39:16
**conversations** [3] - 19:21, 21:23, 25:7
**coordinate** [1] - 34:13
**correct** [1] - 41:17
**corrected** [3] - 2:6, 2:7, 16:24
**counsel** [1] - 13:7
**Counsel's** [1] - 16:9
**County** [1] - 37:6
**couple** [5] - 8:20, 10:8, 26:15, 26:18, 28:12
**course** [3] - 17:23, 21:2, 40:24
**courses** [1] - 17:4
**Court** [11] - 1:23, 12:14, 12:25, 14:10, 16:7, 18:3, 18:7, 39:11, 41:16
**COURT** [128] - 1:1, 2:2, 2:8, 5:21, 5:24, 6:2, 7:2, 7:18, 8:4, 8:6, 8:11, 9:6, 9:22, 10:1, 10:5, 10:19, 10:22, 11:2, 11:12, 11:20, 11:22, 12:1, 12:6, 12:18, 13:2, 13:21, 14:2, 14:14, 15:2, 15:8, 15:12, 16:2, 16:9, 16:16, 16:19, 16:21, 17:2, 24:11, 24:16, 24:23, 25:21, 25:23, 26:1, 27:5, 27:15, 27:18, 27:20, 28:1, 28:5, 28:8, 28:11, 28:17, 28:20, 28:22, 28:25, 29:3, 29:8, 29:10, 29:13, 29:16, 29:19, 29:25, 30:3, 30:6, 30:14, 30:16, 30:19, 30:21, 30:25, 31:2, 31:4, 31:10, 31:12, 31:16, 31:18, 31:20, 32:2, 32:6, 32:9, 32:12, 32:17, 32:19, 32:23, 32:25, 33:2, 33:9, 33:12, 33:16, 33:19, 34:4, 34:6, 34:10, 34:13, 34:15, 34:17, 34:19, 34:22, 35:1, 35:3, 35:7, 35:9, 35:11, 35:13, 35:18, 35:21, 35:24, 36:6, 36:10, 36:12, 36:16, 37:11, 37:15, 37:19, 37:24, 38:11, 38:13, 38:15, 38:17, 39:6, 39:9, 39:18, 39:22, 40:2, 40:7, 40:11, 41:4, 41:10, 41:23
**court** [21] - 2:21, 3:2, 3:13, 4:8, 4:11, 4:16, 4:17, 4:21, 5:11, 5:12, 6:5, 6:6, 8:1, 12:23, 19:7, 19:8, 21:5, 22:8, 27:7, 28:9
**court's** [1] - 22:4
**Court's** [1] - 7:17
**Courthouse** [1] - 29:23
**courthouse** [21] - 6:17, 10:12, 19:14, 19:15, 23:9, 24:2, 24:22, 24:24, 27:22, 28:13, 29:4, 29:21, 30:10, 31:6, 31:23, 32:13, 33:5, 33:25, 34:23, 35:15, 36:3
**courtroom** [35] - 2:24, 3:1, 4:6, 5:10, 6:16, 7:22, 7:24, 10:12, 13:8, 13:16, 18:23, 23:9, 24:2, 25:25, 26:23, 27:4, 27:6, 27:19, 27:22, 28:14, 29:4, 29:21, 30:11, 31:7, 31:23, 32:13, 33:5, 33:25, 34:24, 35:15, 36:2, 38:5, 38:16, 39:5, 41:6
**Courtroom** [1] - 1:9
**courts** [2] - 20:23, 22:10
**creating** [1] - 22:16
**CRIMINAL** [1] - 1:5
**critical** [1] - 18:16
**cross** [1] - 40:23
**cruel** [3] - 38:1, 38:18
**crystal** [1] - 5:3
**crystallization** [1] - 3:18
**CSI** [1] - 19:22
**CSO** [1] - 27:8

D

**Dated** [1] - 41:20
**DAVON** [1] - 1:6
**days** [1] - 17:23
**deal** [1] - 40:16
**decided** [1] - 14:2
**defendant** [1] - 17:14
**Defendant** [1] - 1:17
**defendants** [7] - 13:14, 13:15, 16:10, 20:4, 20:5, 20:7, 22:3
**defendants'** [1] - 40:22
**Defender** [1] - 1:19
**defense** [7] - 2:22, 3:13, 7:6, 7:11, 9:1, 9:7, 24:11
**defenses'** [2] - 6:4, 36:18
**delete** [1] - 24:15
**deliberation** [1] - 21:18
**deliberative** [1] -

18:8
**demeanor** [1] - 23:2
**DENNIS** [1] - 1:6
**deny** [2] - 17:13, 20:17
**deputy** [8] - 2:24, 3:1, 4:6, 5:10, 7:22, 7:24, 18:23, 26:23
**derives** [1] - 21:1
**described** [1] - 9:3
**detail** [1] - 16:15
**detect** [1] - 22:11
**detecting** [1] - 22:16
**determine** [1] - 17:5
**different** [3] - 6:6, 6:7, 20:21
**difficult** [1] - 13:4
**difficulty** [1] - 37:22
**dip** [1] - 40:13
**dire** [13] - 16:25, 17:5, 17:12, 17:18, 17:23, 19:24, 21:8, 21:10, 22:13, 22:23, 26:18, 27:10, 35:4
**dire-type** [1] - 27:10
**direct** [2] - 18:19, 22:11
**directly** [1] - 19:9
**discretion** [2] - 11:8, 23:6
**discuss** [4] - 21:18, 23:23, 23:24
**discussed** [2] - 4:5, 21:21
**discussion** [1] - 24:24
**discussions** [3] - 22:6, 24:14, 24:21
**dismissed** [13] - 28:10, 28:21, 29:15, 30:5, 30:24, 31:17, 32:8, 32:24, 33:18, 34:16, 35:8, 35:23, 36:15
**distinction** [2] - 18:15, 25:6
**distinguished** [1] - 18:3
**DISTRICT** [2] - 1:1, 1:2
**District** [2] - 41:16, 41:17
**district** [6] - 4:16, 4:17, 4:21, 20:23, 22:4, 22:10
**DIVISION** [1] - 1:2
**done** [4] - 9:2, 13:6, 22:23, 26:19
**DONTE** [1] - 1:6
**door** [3] - 16:2, 19:13, 27:5
**down** [2] - 5:18, 38:7
**downside** [1] - 6:21
**downstream** [1] - 4:22
**drawing** [1] - 4:9
**during** [4] - 21:17, 36:24, 40:13, 40:15

## E

**early** [3] - 37:25, 38:18, 38:19
**easy** [3] - 38:6, 38:22, 38:24
**ECF** [3] - 2:5, 2:7, 16:23
**effect** [3] - 10:10, 22:19, 23:14
**effectively** [2] - 14:24, 21:9
**effort** [1] - 36:25
**either** [2] - 12:1, 18:8
**eliminates** [1] - 4:22
**emphasizing** [1] - 4:15
**encourage** [1] - 4:19
**encouraged** [1] - 22:11
**Encouraged** [1] - 20:23
**end** [4] - 14:4, 19:25, 27:13, 37:17
**engaging** [1] - 11:19
**enhanced** [1] - 7:25
**enter** [1] - 19:15
**entered** [15] - 25:25, 27:19, 28:10, 28:21, 29:15, 30:5, 30:24, 31:17, 32:8, 32:24, 33:18, 34:16, 35:8, 35:23, 38:16
**entitled** [1] - 41:18
**episode** [1] - 36:20
**Esquire** [6] - 1:14, 1:15, 1:18, 1:18, 1:20, 1:20
**essential** [1] - 9:5
**essentially** [4] - 12:13, 18:1, 22:22, 23:7
**established** [1] - 18:7
**establishing** [1] - 11:15
**evaluating** [1] - 22:8
**evidence** [13] - 2:21, 12:15, 12:21, 13:3, 13:4, 18:10, 21:2, 21:19, 25:5, 37:3, 37:7, 40:14
**exactly** [5] - 4:2, 6:22, 7:14, 11:20, 12:5
**example** [1] - 2:17
**excellent** [2] - 40:20, 40:25
**except** [4] - 7:2, 16:10, 16:18
**EXCERPTS** [1] - 1:10
**exchange** [1] - 21:8
**excuse** [8] - 8:18, 8:21, 10:7, 10:9, 23:22, 26:11, 26:20, 38:3
**exhibits** [2] - 23:15, 26:5
**exit** [1] - 39:2
**exited** [2] - 27:4, 39:5
**exposure** [1] - 3:23
**express** [1] - 3:20
**expressed** [1] - 22:6
**expressing** [3] - 2:20, 6:3, 21:7
**expressly** [1] - 22:5
**extensive** [1] - 17:22
**extent** [1] - 18:22
**external** [17] - 4:10, 4:12, 5:4, 5:6, 12:16, 12:22, 18:2, 18:4, 18:8, 18:15, 18:16, 18:23, 19:18, 19:19, 19:23, 20:14, 20:17
**extra** [3] - 2:15, 2:19, 26:10
**extraneous** [2] - 18:9, 19:6
**extrinsic** [2] - 4:2, 19:2

## F

**F.3d** [3] - 3:21, 3:25, 17:20
**fact** [5] - 5:11, 14:25, 18:10, 19:12, 20:1
**factor** [1] - 19:19
**fair** [24] - 6:21, 9:10, 10:15, 11:15, 12:24, 17:6, 21:11, 21:15, 24:6, 28:18, 29:11, 30:1, 30:16, 31:14, 32:3, 32:20, 33:12, 33:14, 34:7, 35:4, 35:5, 35:19, 36:7, 36:20
**falls** [1] - 11:14
**familiar** [1] - 37:10
**far** [5] - 3:17, 6:12, 7:13, 14:15, 24:7
**fear** [11] - 2:20, 2:21, 3:10, 4:1, 4:3, 4:22, 5:8, 13:13, 13:24, 19:2, 21:7
**fearful** [2] - 13:22, 23:10
**fears** [3] - 4:24, 12:21, 22:6
**Federal** [1] - 1:23
**FEDERAL** [1] - 41:23
**federal** [3] - 6:5, 8:1, 19:7
**feelings** [2] - 3:10, 27:11
**fellow** [1] - 19:19
**felt** [1] - 40:4
**fessed** [1] - 39:12
**few** [1] - 22:13
**fiancé** [1] - 37:9
**file** [1] - 2:9
**filed** [1] - 2:6
**finalize** [1] - 37:12
**finally** [2] - 5:2, 5:16
**fine** [5] - 7:18, 12:18, 14:8, 24:12, 27:15
**first** [7] - 3:15, 6:2, 7:21, 14:25, 31:25, 37:3, 41:1
**fishing** [1] - 25:5
**five** [3] - 2:9, 16:3, 16:6
**flags** [1] - 23:1
**Floor** [1] - 1:24
**focus** [1] - 24:19
**follow** [5] - 23:20, 26:9, 26:15, 40:5
**follow-up** [3] - 23:20, 26:9
**follow-ups** [2] - 26:15, 40:5
**followed** [1] - 22:9
**following** [1] - 32:9
**FOR** [1] - 1:2
**foregoing** [1] - 41:17
**forgot** [1] - 33:20
**formal** [1] - 3:17
**format** [1] - 41:18
**forth** [2] - 26:22, 28:8
**Fourth** [10] - 4:15, 5:2, 5:3, 6:22, 17:21, 18:6, 18:14, 20:23, 22:7, 22:10
**Fowler's** [1] - 40:13
**framework** [1] - 2:23
**framing** [1] - 2:23
**frankly** [3] - 13:10, 19:10, 25:3
**front** [5] - 19:13, 19:25, 33:2, 34:17, 35:24
**Fuel** [1] - 37:9
**fully** [1] - 11:3

## G

**gallery** [3] - 4:9, 5:4, 13:16
**gang** [1] - 13:20
**gangs** [1] - 21:2
**Garcia** [2] - 3:25, 19:1
**Garcon** [3] - 1:18, 12:7, 39:6
**GARCON** [14] - 2:6, 12:10, 12:19, 13:12, 13:22, 24:12, 25:22, 38:9, 38:12, 38:14, 39:8, 39:10, 39:19, 39:25
**Gary** [1] - 1:20
**general** [4] - 19:5, 21:16, 21:21, 24:17
**generalized** [4] - 6:12, 7:11, 19:16, 20:16
**generally** [2] - 20:12, 37:5
**generate** [1] - 9:11
**generic** [1] - 3:4
**given** [6] - 2:21, 9:16, 20:3, 20:6, 21:17, 22:23
**Gladden** [1] - 19:18
**goal** [1] - 22:15
**gonna** [1] - 37:16
**Googling** [1] - 39:3
**government** [3] - 11:14, 17:7, 24:9
**Government** [5] - 2:4, 17:2, 19:15, 25:14, 40:22
**Government's** [2] - 9:14, 21:24
**grand** [1] - 15:10
**grant** [1] - 17:12
**granted** [1] - 40:9
**great** [11] - 8:14, 26:3, 29:13, 30:21, 32:6, 33:16, 34:10,

34:20, 35:7, 40:19, 40:25
**group** [4] - 10:7, 22:18, 22:23, 22:24
**gruesome** [2] - 13:5, 13:17
**guess** [7] - 6:2, 6:14, 7:14, 8:6, 16:17, 27:8, 39:23
**guilty** [1] - 19:20
**guys** [1] - 37:11

H

**Hairston** [4] - 17:4, 17:24, 25:11, 40:24
**HAIRSTON** [1] - 1:6
**Hairston's** [2] - 16:24, 37:4
**halfway** [1] - 11:7
**hand** [1] - 18:4
**handcuffed** [1] - 20:5
**hard** [1] - 40:14
**harm** [4] - 6:14, 6:22, 8:4, 8:8
**head** [13] - 14:19, 21:25, 27:2, 28:5, 28:20, 31:16, 32:6, 32:23, 33:16, 34:10, 35:7, 35:21, 36:12
**heads** [1] - 14:10
**hear** [15] - 6:18, 6:20, 24:3, 27:24, 29:8, 29:10, 29:25, 30:14, 31:13, 32:2, 32:17, 33:9, 34:4, 34:6, 35:1
**heard** [36] - 4:8, 6:20, 11:4, 16:20, 21:6, 24:5, 27:21, 27:23, 28:1, 28:14, 28:16, 28:17, 29:5, 29:9, 29:22, 29:23, 30:12, 31:8, 31:10, 31:24, 32:1, 32:2, 32:14, 32:18, 32:19, 33:6, 34:1, 34:5, 34:7, 34:23, 35:16, 35:18, 36:3, 36:6, 37:8
**hearing** [11] - 12:12, 12:21, 13:23, 17:6, 17:7, 17:13, 20:17, 20:21, 22:14, 25:20, 39:14
**hearings** [1] - 41:2
**heart** [1] - 3:24
**held** [2] - 22:7, 41:18
**hello** [1] - 35:10
**hereby** [1] - 41:17
**hesitation** [1] - 40:4
**hi** [1] - 33:1
**Higgins** [1] - 37:6
**high** [1] - 10:3
**highlighted** [2] - 6:23, 21:2
**hold** [3] - 4:17, 38:3, 39:1
**home** [2] - 8:21, 14:5
**Honor** [14] - 2:13, 3:16, 7:20, 9:25, 10:24, 13:12, 15:10, 16:17, 24:10, 24:12, 24:13, 38:9, 39:10, 40:6
**Honorable** [1] - 16:7
**HONORABLE** [1] - 1:12
**hoping** [1] - 37:13
**horrifying** [1] - 3:8
**HURSON** [1] - 1:12
**hybrid** [1] - 11:2

I

**i.e** [1] - 18:9
**identified** [1] - 25:14
**identifies** [1] - 17:19
**images** [1] - 13:5
**immediately** [1] - 40:23
**impact** [8] - 6:20, 10:15, 29:10, 30:1, 31:13, 32:3, 34:7, 36:7
**impacted** [3] - 28:2, 32:20, 35:19
**impartial** [29] - 6:21, 10:15, 11:13, 11:15, 12:24, 14:1, 17:6, 17:15, 20:22, 21:12, 21:15, 23:11, 24:6, 28:3, 28:18, 29:11, 30:1, 30:16, 31:14, 32:4, 32:21, 33:12, 33:14, 34:8, 35:4, 35:5, 35:19, 36:8, 36:20
**impartiality** [1] - 22:15
**implied** [1] - 38:17
**implying** [1] - 6:6
**importance** [1] - 9:10
**important** [1] - 40:3
**imposed** [1] - 18:18
**IN** [1] - 1:1
**inadequate** [1] - 22:4
**inadvertently** [1] - 22:16
**incident** [7] - 14:22, 19:11, 20:5, 24:19, 24:25, 25:4, 39:24
**inclined** [2] - 9:11, 11:7
**including** [2] - 17:11, 25:3
**incorrect** [1] - 6:8
**increase** [1] - 4:19
**indicate** [2] - 4:24, 19:5
**indicated** [1] - 35:4
**indicates** [1] - 20:6
**indication** [1] - 9:3
**individual** [1] - 39:11
**individually** [2] - 17:8, 17:24
**indulgence** [1] - 7:17
**inferences** [1] - 4:8
**influence** [9] - 3:23, 3:24, 11:6, 18:7, 18:11, 18:18, 18:22, 19:23, 20:14
**influences** [7] - 18:1, 18:2, 18:4, 18:5, 18:16, 19:6
**information** [4] - 13:19, 18:9, 24:23
**informed** [1] - 21:5
**innocuous** [6] - 3:5, 5:9, 7:23, 8:7, 18:24, 20:16
**innocuously** [1] - 10:3
**inquire** [1] - 11:3
**inquired** [1] - 14:20
**inquiring** [1] - 31:24
**inquiry** [16] - 4:17, 12:23, 13:1, 16:4, 17:25, 18:2, 18:17, 20:9, 20:19, 20:24, 20:25, 23:1, 24:17, 36:18, 39:11
**inquisition** [1] - 8:17
**instances** [1] - 14:19
**instructed** [2] - 5:12, 22:10
**instructing** [1] - 10:4
**instruction** [1] - 21:17
**intend** [1] - 36:22
**interesting** [3] - 6:9, 39:12, 40:20
**interfere** [1] - 37:21
**internal** [6] - 18:1, 18:4, 18:15, 18:18, 18:22, 20:21
**interpretation** [1] - 6:12
**intervention** [2] - 3:5, 7:23
**invite** [1] - 23:5
**invites** [1] - 7:13
**involve** [1] - 2:18
**involved** [1] - 13:19
**issue** [12] - 6:4, 6:10, 8:3, 14:17, 14:18, 16:4, 18:11, 18:20, 20:12, 24:8, 25:9
**issues** [3] - 25:12, 40:4, 40:5
**itself** [2] - 3:11, 6:24

J

**jail** [1] - 37:12
**Jennifer** [1] - 1:20
**job** [2] - 8:14, 40:20
**Johnson** [3] - 5:2, 18:5, 18:19
**joining** [1] - 16:25
**jolting** [1] - 34:20
**jovial** [2] - 7:7, 8:9
**Judge** [3] - 1:12, 27:16, 41:2
**judge** [2] - 6:11, 8:10
**Judicial** [1] - 41:19
**judicial** [3] - 2:15, 4:10, 18:17
**jumping** [2] - 38:7, 38:23
**juries** [3] - 8:15, 23:18, 26:8
**JUROR** [56] - 27:24, 28:4, 28:7, 28:16, 28:19, 28:24, 29:2, 29:7, 29:9, 29:12, 29:14, 29:18, 29:23, 30:2, 30:13, 30:15, 30:18, 30:20, 30:23, 31:1, 31:3, 31:9, 31:11, 31:15, 31:19, 32:1, 32:5, 32:7, 32:11, 32:16, 32:18, 32:22, 33:1, 33:8, 33:11, 33:15, 33:17, 34:3, 34:5, 34:9, 34:12, 34:14, 34:18, 34:21, 34:25, 35:2, 35:6, 35:10, 35:12, 35:17, 35:20, 35:22, 36:5, 36:9, 36:11, 36:14
**juror** [28] - 2:16, 2:17, 2:18, 2:20, 2:23, 2:24, 3:17, 6:3, 10:15, 12:15, 12:20, 13:18, 18:13, 20:7, 21:15, 22:5, 23:24, 32:21, 33:14, 34:8, 34:15, 35:19, 39:12, 39:16, 39:20
**Juror** [28] - 8:23, 27:12, 27:19, 28:10, 28:21, 29:15, 30:5, 30:24, 31:17, 32:8, 32:24, 33:18, 34:16, 35:8, 35:23, 36:15
**juror's** [4] - 3:4, 4:1, 4:3, 19:2
**jurors** [31] - 3:7, 3:19, 4:6, 4:19, 5:5, 5:11, 5:18, 6:15, 6:25, 8:9, 8:15, 13:10, 14:5, 17:5, 17:8, 17:19, 17:23, 17:25, 19:9, 19:13, 20:2, 21:6, 22:1, 22:4, 22:6, 23:10, 24:18, 25:1, 27:25, 36:19, 40:9
**jurors'** [12] - 3:20, 4:18, 4:22, 6:24, 13:13, 18:24, 19:4, 19:21, 20:10, 20:13, 22:9, 25:13
**jury** [33] - 5:6, 6:10, 8:18, 9:14, 10:7, 10:12, 11:13, 15:10, 15:13, 17:15, 18:4, 18:12, 18:18, 20:22, 21:4, 21:5, 21:14, 21:23, 22:18, 22:22,

24:3, 25:25, 26:12, 26:14, 26:16, 27:4, 36:2, 38:2, 38:5, 38:16, 39:5
**JURY** [1] - 1:10
**jury's** [1] - 18:8
**jut** [1] - 30:19

**K**

**KASSANDRA** [1] - 41:22
**Kassandra** [2] - 1:23, 41:16
**Keel** [1] - 37:8
**keep** [2] - 5:20, 33:21
**killed** [1] - 5:9
**kind** [11] - 2:19, 2:22, 3:2, 5:12, 8:16, 8:22, 13:14, 20:25, 21:24, 37:25, 38:17
**kinds** [1] - 13:1
**King** [2] - 3:15, 17:11
**knows** [1] - 25:6

**L**

**Las** [3] - 19:11, 19:22, 20:4
**last** [3] - 14:24, 21:10, 25:17
**Law** [1] - 19:22
**law** [4] - 5:21, 14:14, 18:7, 23:5
**lawyers** [1] - 13:16
**leaning** [3] - 10:16, 10:22, 16:5
**least** [2] - 20:6, 20:14
**leave** [2] - 38:15, 38:18
**leaving** [1] - 37:25
**left** [1] - 5:19
**lenient** [1] - 19:25
**less** [2] - 5:17, 22:21
**level** [3] - 9:7, 10:3, 16:15
**line** [2] - 13:13, 22:16
**listened** [2] - 3:1, 3:8
**listening** [1] - 3:7
**literally** [1] - 6:7
**lock** [1] - 27:9
**Lombard** [1] - 1:24
**look** [6] - 6:15, 7:3, 7:15, 13:13, 14:14, 29:18
**looked** [1] - 21:7
**looking** [3] - 4:10, 22:2, 37:1
**lost** [1] - 39:16
**love** [1] - 34:19
**lunch** [1] - 17:4

**M**

**maintain** [1] - 13:6
**manner** [4] - 13:7, 17:18, 23:16, 26:6
**marshals** [1] - 37:18
**MARYLAND** [1] - 1:2
**Maryland** [2] - 1:9, 41:17
**matter** [1] - 41:18
**MAY** [1] - 1:8
**McPherson** [2] - 1:23, 41:16
**MCPHERSON** [1] - 41:22
**MD** [1] - 1:24
**mean** [11] - 6:7, 8:7, 9:15, 11:24, 13:2, 19:13, 25:6, 31:11, 34:11, 40:2, 40:11
**meaning** [1] - 21:10
**member** [2] - 21:5, 40:4
**members** [4] - 4:9, 5:4, 5:6, 21:3
**mentioned** [1] - 3:16
**might** [5] - 14:12, 16:13, 17:9, 23:19, 34:12
**mind** [4] - 5:20, 16:2, 23:7, 25:16
**minds** [3] - 6:24, 6:25, 25:13
**minutes** [4] - 2:10, 16:3, 16:6, 38:19
**moment** [1] - 9:21
**Monday** [13] - 26:17, 33:13, 37:1, 37:2, 37:11, 37:14, 37:19, 37:24, 38:19, 38:25, 40:17, 41:1
**morning** [7] - 10:12, 16:23, 24:3, 24:15, 24:25, 27:22, 34:14
**most** [2] - 3:5, 40:3
**motion** [4] - 16:24, 16:25, 40:9
**move** [6] - 3:3, 5:13, 8:3, 19:16, 37:2, 37:7
**multiple** [1] - 5:9
**must** [1] - 17:18

**N**

**Nah** [1] - 32:11
**narrow** [1] - 7:15
**narrowed** [1] - 7:3
**nature** [2] - 21:3, 27:10
**necessary** [4] - 4:23, 8:16, 13:1, 22:9
**necessitate** [1] - 18:17
**need** [3] - 5:19, 26:9, 38:7
**needed** [1] - 4:25
**nervous** [1] - 13:9
**never** [2] - 8:7, 20:13
**nevertheless** [2] - 18:10, 20:3
**new** [4] - 29:1, 35:11, 37:3, 40:23
**next** [5] - 14:3, 23:17, 26:7, 34:12, 34:15
**night** [3] - 14:24, 15:4, 36:22
**NO** [57] - 1:5, 27:24, 28:4, 28:7, 28:16, 28:19, 28:24, 29:2, 29:7, 29:9, 29:12, 29:14, 29:18, 29:23, 30:2, 30:13, 30:15, 30:18, 30:20, 30:23, 31:1, 31:3, 31:9, 31:11, 31:15, 31:19, 32:1, 32:5, 32:7, 32:11, 32:16, 32:18, 32:22, 33:1, 33:8, 33:11, 33:15, 33:17, 34:3, 34:5, 34:9, 34:12, 34:14, 34:18, 34:21, 34:25, 35:2, 35:6, 35:10, 35:12, 35:17, 35:20, 35:22, 36:5, 36:9, 36:11, 36:14
**none** [2] - 39:15, 39:19
**normal** [1] - 22:21
**normally** [3] - 22:22, 27:6, 30:7
**NORTHERN** [1] - 1:2
**note** [7] - 3:17, 19:23, 38:9, 39:10, 39:13, 39:20, 40:6
**noted** [6] - 13:18, 36:19, 36:21, 39:14, 39:15, 39:23
**Notes** [1] - 1:22
**notes** [5] - 3:22, 12:20, 23:14, 26:4, 40:15
**nothing** [11] - 3:22, 4:24, 7:8, 8:16, 13:3, 13:6, 13:7, 19:17, 25:8, 25:20, 35:18
**noticed** [3] - 8:13, 23:14, 26:3
**noting** [1] - 39:25
**notion** [1] - 7:1
**Number** [1] - 27:12
**number** [2] - 2:5, 30:6

**O**

**object** [3] - 14:12, 14:15, 14:16
**objection** [1] - 39:22
**objections** [1] - 36:21
**obligation** [1] - 18:17
**observation** [1] - 21:25
**observe** [1] - 19:9
**observing** [1] - 4:13
**obvious** [2] - 19:8, 22:21
**obviously** [4] - 11:8, 17:14, 39:19, 40:20
**occurred** [3] - 10:11, 21:9, 24:2
**occurrences** [1] - 17:17
**OF** [3] - 1:2, 1:4, 41:15
**Office** [1] - 1:19
**Officer** [1] - 37:6
**officer** [1] - 37:6
**OFFICIAL** [2] - 41:15, 41:23
**Official** [1] - 1:23
**often** [1] - 19:24
**once** [1] - 20:1
**one** [45] - 2:6, 2:7, 5:17, 5:18, 6:15, 8:9, 8:11, 8:17, 8:19, 9:21, 10:8, 13:5, 13:17, 13:18, 14:21, 18:4, 20:7, 21:5, 22:23, 22:24, 23:23, 24:19, 24:25, 26:8, 26:15, 26:23, 26:24, 27:2, 27:3, 30:8, 31:20, 33:7, 34:12, 34:19, 36:16, 38:22, 39:13, 39:16
**open** [2] - 24:17, 38:5
**opening** [1] - 25:1
**opportunity** [1] - 17:2
**opposes** [1] - 17:7
**orally** [1] - 17:3
**Order** [1] - 19:22
**order** [2] - 14:7, 37:5
**orderly** [2] - 23:16, 26:6
**ordinary** [1] - 9:4
**otherwise** [2] - 14:18, 25:5
**outside** [4] - 3:23, 3:24, 11:6, 18:11
**overhear** [1] - 10:14
**overheard** [1] - 21:14
**own** [3] - 4:1, 19:2, 21:25

**P**

**p.m** [6] - 16:8, 25:25, 27:4, 38:16, 39:5, 41:11
**page** [3] - 3:22, 6:24, 41:18
**panel** [1] - 5:6
**paramount** [1] - 9:10
**Parker** [1] - 19:18
**part** [4] - 12:3, 13:20, 27:7, 34:2
**partiality** [1] - 18:12
**partially** [1] - 37:25
**participate** [10] - 6:17, 10:13, 24:3, 27:24, 29:24, 30:14, 31:9, 32:1, 32:18, 33:9
**participated** [13] - 6:19, 27:23, 28:15, 29:6, 29:22, 30:12, 31:8, 31:25, 32:14, 33:7, 34:23, 35:16, 36:4
**participating** [1] - 39:15
**parties** [2] - 16:14, 39:20
**party** [4] - 2:16, 14:23, 15:6, 15:7
**past** [1] - 8:3
**patently** [1] - 5:6
**paul** [1] - 1:14
**Pause** [2] - 7:19, 9:23
**pause** [2] - 13:9,

13:11
**paying** [3] - 8:13, 23:14, 26:4
**people** [5] - 7:4, 11:15, 13:9, 13:19, 41:5
**perfectly** [1] - 13:10
**perhaps** [2] - 7:1, 7:5
**person** [3] - 4:14, 5:11, 11:3
**personal** [3] - 13:2, 20:13, 27:11
**phone** [1] - 40:16
**photographs** [1] - 5:5
**phrased** [1] - 14:18
**picture** [2] - 13:17, 13:18
**pivot** [1] - 40:23
**plan** [2] - 22:18, 37:20
**planning** [1] - 14:22
**plant** [3] - 6:25, 21:25, 24:8
**plants** [2] - 6:24, 25:12
**point** [6] - 3:16, 4:20, 5:16, 19:11, 24:16, 37:11
**Polk** [1] - 18:14
**pool** [1] - 21:23
**portion** [4] - 2:1, 15:14, 16:1, 41:12
**posed** [4] - 16:14, 20:18, 21:20, 23:25
**position** [4] - 2:14, 5:15, 5:25, 12:2
**possible** [3] - 13:25, 20:12, 25:12
**possibly** [2] - 5:17, 28:16
**potentially** [2] - 17:19, 20:4
**praised** [1] - 4:16
**precise** [1] - 23:4
**prejudicial** [3] - 17:17, 18:9, 18:25
**present** [1] - 2:3
**presented** [1] - 21:19
**preserve** [1] - 9:1
**pressuring** [1] - 2:18
**presumption** [4] - 11:13, 22:15, 40:9
**presumptively** [1] - 20:22
**prevent** [1] - 17:17
**private** [1] - 18:12
**probing** [2] - 36:18, 39:24
**problem** [1] - 11:22
**problems** [1] - 9:11
**procedure** [1] - 11:11
**proceeding** [1] - 4:10
**proceedings** [6] - 3:11, 5:7, 7:19, 9:23, 41:11, 41:18
**process** [3] - 6:24, 6:25, 18:8
**proctor** [1] - 16:10
**Proctor** [1] - 1:20
**PROCTOR** [7] - 17:1, 24:13, 24:21, 25:19, 27:16, 41:2, 41:9
**Professional** [1] - 41:16
**professional** [1] - 13:7
**prompt** [2] - 3:9, 8:10
**pronounce** [1] - 12:17
**properly** [2] - 4:16, 14:18
**proposed** [1] - 16:17
**protocol** [1] - 7:9
**provoke** [1] - 5:8
**prudential** [1] - 5:16
**prying** [1] - 27:10
**Public** [1] - 1:19
**purpose** [1] - 25:3
**purposes** [2] - 10:23, 11:10
**pursuant** [1] - 41:17
**pushing** [1] - 40:21
**put** [2] - 7:21, 39:6

## Q

**question's** [1] - 14:18
**questioned** [2] - 8:10, 17:24
**questioning** [5] - 6:23, 6:25, 17:8, 21:22, 22:4
**questions** [17] - 8:20, 10:3, 10:9, 10:10, 16:13, 17:23, 19:25, 20:3, 21:8, 21:20, 22:7, 22:13, 23:4, 23:19, 23:25, 26:18, 28:12
**quick** [3] - 26:15, 26:18, 28:12
**quite** [3] - 6:7, 19:10, 25:3
**quote** [3] - 3:22, 18:19, 20:23
**quoting** [2] - 6:24, 18:14

## R

**raise** [3] - 14:9, 14:22, 37:14
**raised** [2] - 4:24, 12:15
**raising** [2] - 13:25, 25:12
**rather** [2] - 3:19, 4:18
**reach** [1] - 15:3
**reached** [1] - 14:23
**reaches** [1] - 9:7
**reaction** [1] - 6:3
**reactions** [1] - 22:9
**read** [3] - 12:7, 16:21, 22:19
**real** [3] - 3:18, 38:20, 38:21
**really** [18] - 4:13, 4:25, 5:22, 5:25, 18:20, 19:11, 20:13, 21:24, 22:15, 23:25, 25:11, 34:10, 36:21, 38:4, 38:18, 40:3, 40:19
**reason** [1] - 25:8
**reasonable** [1] - 12:6
**reasonably** [1] - 5:8
**received** [1] - 16:23
**recess** [1] - 16:7
**RECESS** [1] - 16:8
**record** [13] - 9:1, 10:23, 11:1, 11:10, 30:19, 36:19, 38:10, 39:7, 39:11, 39:14, 39:21, 40:1, 40:6
**red** [1] - 23:1
**reduce** [1] - 22:25
**reference** [2] - 8:1, 9:17
**referenced** [1] - 14:11
**reflects** [1] - 3:18
**regard** [1] - 18:18
**regarding** [2] - 6:5, 23:9
**Registered** [1] - 41:16
**regulations** [1] - 41:19
**related** [3] - 2:12, 37:3, 37:4
**relating** [1] - 37:7
**relayed** [1] - 5:5
**relaying** [1] - 5:7
**remain** [6] - 11:15, 12:24, 17:5, 17:17, 36:19, 40:10
**remark** [1] - 2:25
**remember** [2] - 21:16, 39:2
**Remmer** [25] - 2:15, 2:23, 3:6, 3:24, 4:17, 4:25, 5:1, 5:16, 6:1, 7:21, 10:24, 11:11, 11:12, 11:18, 12:12, 17:6, 17:7, 17:13, 18:2, 20:17, 20:21, 22:14, 25:19, 40:9
**Remmered** [1] - 11:3
**renew** [1] - 37:16
**repeat** [1] - 25:10
**repeating** [1] - 25:15
**repetitive** [1] - 20:1
**report** [1] - 4:19
**reported** [1] - 41:18
**Reported** [1] - 1:23
**REPORTER** [2] - 41:15, 41:23
**Reporter** [2] - 1:23, 41:16
**request** [8] - 14:7, 17:12, 17:13, 20:8, 25:19, 36:18, 37:16, 39:23
**Requested** [4] - 2:1, 15:14, 16:1, 41:12
**requests** [1] - 17:4
**required** [1] - 20:19
**requires** [1] - 17:16
**research** [2] - 39:4
**respect** [1] - 6:3
**respond** [3] - 2:4, 17:3, 23:13
**response** [2] - 2:9, 18:23
**responses** [1] - 22:8
**restrained** [2] - 20:8
**retaliation** [1] - 21:6
**return** [2] - 23:17, 26:7
**reviewed** [1] - 17:10
**riding** [1] - 38:24
**Ridley** [1] - 17:16
**risk** [5] - 4:22, 7:5, 25:14, 25:16
**Robinson** [1] - 18:14
**rocking** [1] - 29:2
**room** [10] - 8:19, 10:7, 10:12, 21:14, 24:3, 26:14, 26:16, 26:19, 36:2, 41:8
**root** [2] - 4:18, 4:21
**row** [2] - 33:2, 34:17
**RPR** [2] - 1:23, 41:22
**rule** [1] - 16:3
**ruling** [1] - 16:22
**running** [2] - 23:20, 26:2
**runs** [1] - 7:6

## S

**safe** [1] - 41:1
**safety** [8] - 3:20, 9:17, 12:15, 12:20, 13:25, 19:5, 20:11, 20:13
**Sasha** [1] - 1:18
**satisfied** [1] - 36:19
**saw** [1] - 40:15
**scenario** [1] - 13:14
**schedule** [2] - 23:21, 26:2
**scope** [1] - 14:12
**screening** [1] - 19:14
**seal** [1] - 27:6
**sealing** [1] - 27:9
**seat** [13] - 27:13, 27:14, 28:11, 29:1, 29:16, 29:17, 31:2, 31:18, 31:19, 33:2, 33:19, 35:11, 35:25
**seated** [4] - 2:3, 26:1, 27:5, 38:21
**second** [6] - 17:6, 18:21, 21:13, 22:19, 26:13, 40:3
**sections** [1] - 37:3
**security** [45] - 4:19, 6:5, 6:8, 6:17, 7:9, 7:25, 10:13, 19:8, 19:12, 19:14, 23:9, 23:10, 24:2, 24:22, 24:24, 27:22, 27:25, 28:14, 29:4, 29:5, 29:21, 29:23, 30:11, 31:7, 31:23, 32:13, 32:14, 33:5,

33:6, 33:25, 34:1, 34:24, 35:15, 36:2, 36:3
**see** [13] - 7:8, 9:15, 15:10, 16:5, 23:18, 25:8, 29:16, 30:21, 35:24, 36:13, 37:20, 38:24, 39:2
**seeds** [3] - 21:25, 24:8, 25:12
**seeing** [1] - 3:7
**seem** [1] - 13:10
**send** [1] - 26:18
**sense** [2] - 13:24, 27:1
**sensitive** [1] - 20:8
**serious** [2] - 9:9, 13:24
**serve** [1] - 21:13
**Seventh** [4] - 3:21, 12:19, 17:16, 20:15
**shackles** [1] - 20:6
**shifting** [1] - 22:24
**shoehorn** [1] - 2:22
**shows** [1] - 19:21
**shutting** [1] - 16:2
**significant** [1] - 11:6
**similar** [4] - 13:23, 20:24, 22:12, 26:17
**similarly** [2] - 3:25, 19:21
**simply** [2] - 2:18, 6:15
**sit** [8] - 26:12, 27:13, 27:16, 28:24, 28:25, 30:7, 33:3, 35:24
**situation** [11] - 2:14, 4:5, 5:1, 5:10, 5:15, 6:1, 9:2, 11:3, 19:22, 22:12, 40:8
**situations** [1] - 20:24
**Sixth** [4] - 3:25, 17:16, 19:3, 20:15
**Small** [4] - 4:4, 4:25, 6:23,

17:11
**Smith** [16] - 1:20, 12:17, 14:22, 16:11, 17:11, 17:20, 18:1, 20:25, 21:1, 21:2, 21:20, 22:3, 22:8, 22:12, 23:4
**so..** [2] - 11:8, 40:5
**solution** [1] - 12:4
**someone** [2] - 6:10, 36:23
**something's** [2] - 13:9, 22:21
**sometimes** [1] - 41:5
**soon** [3] - 38:20, 38:21
**sorry** [1] - 28:25
**sort** [14] - 2:11, 3:3, 7:7, 8:13, 9:11, 10:25, 11:7, 11:14, 17:3, 20:18, 25:5, 26:17, 37:2, 37:16
**sound** [1] - 38:25
**sounds** [3] - 3:2, 11:17, 24:10
**source** [1] - 4:12
**Special** [1] - 40:13
**specific** [8] - 7:8, 7:15, 7:25, 11:11, 14:19, 21:21, 21:22, 23:19
**specifically** [1] - 11:4
**speculation** [2] - 7:13, 23:5
**Spencer** [1] - 1:15
**staff** [2] - 27:7, 40:25
**standard** [1] - 9:16
**Stanley** [3] - 16:25, 25:11, 40:25
**STANLEY** [1] - 1:6
**start** [7] - 9:20, 37:17, 37:19, 37:24, 38:20, 38:23, 39:3
**started** [1] - 30:17
**starting** [2] - 22:24, 37:2

**state** [4] - 6:6, 8:1, 19:7, 19:9
**statement** [5] - 3:19, 6:5, 8:3, 19:7, 19:16
**STATES** [2] - 1:1, 1:4
**states** [1] - 19:8
**States** [12] - 1:13, 1:15, 3:15, 4:4, 5:2, 17:15, 17:20, 17:25, 19:3, 21:1, 41:16, 41:19
**stay** [1] - 14:1
**stenographicall y** [1] - 41:18
**stenographicall y-reported** [1] - 41:18
**Stenotype** [1] - 1:22
**still** [6] - 7:21, 20:22, 22:14, 33:14, 33:23, 35:5
**Street** [1] - 1:24
**stuff** [5] - 5:24, 12:7, 39:3, 41:7, 41:8
**subjective** [6] - 2:20, 3:10, 4:1, 4:3, 19:2
**submitted** [1] - 12:8
**substance** [1] - 10:16
**sudden** [1] - 8:23
**sufficient** [1] - 12:12
**suggested** [1] - 3:22
**suggesting** [2] - 12:14, 12:25
**sum** [1] - 10:16
**Supreme** [2] - 18:3, 18:7
**surrounding** [1] - 22:25
**suspense** [1] - 8:22
**suspicion** [1] - 22:25
**swearing** [1] - 37:5
**Szekely** [2] - 1:18, 14:11
**SZEKELY** [7] - 14:21, 15:3, 15:7, 15:9,

37:13, 37:16, 37:22

## T

**taint** [1] - 21:23
**talks** [1] - 19:1
**tampering** [1] - 18:13
**Target** [1] - 37:4
**target** [1] - 25:15
**targeted** [1] - 19:24
**targets** [1] - 24:7
**team** [1] - 27:7
**tech** [1] - 40:24
**Telephone** [1] - 37:4
**television** [1] - 19:21
**terms** [2] - 12:11, 23:3
**territory** [1] - 9:18
**testimony** [10] - 2:25, 3:9, 4:7, 6:3, 8:14, 12:21, 20:11, 23:15, 26:4, 40:13
**THE** [131] - 1:1, 1:2, 1:12, 2:2, 2:8, 5:21, 5:24, 6:2, 7:2, 7:18, 8:4, 8:6, 8:11, 9:6, 9:22, 10:1, 10:5, 10:19, 10:22, 11:2, 11:12, 11:20, 11:22, 12:1, 12:6, 12:18, 13:2, 13:21, 14:2, 14:14, 15:2, 15:8, 15:12, 16:2, 16:7, 16:9, 16:16, 16:19, 16:21, 17:2, 24:11, 24:16, 24:23, 25:21, 25:23, 26:1, 27:5, 27:14, 27:15, 27:18, 27:20, 28:1, 28:5, 28:8, 28:11, 28:17, 28:20, 28:22, 28:25, 29:3, 29:8, 29:10, 29:13, 29:16, 29:19, 29:25, 30:3, 30:6,

30:14, 30:16, 30:19, 30:21, 30:25, 31:2, 31:4, 31:10, 31:12, 31:16, 31:18, 31:20, 32:2, 32:6, 32:9, 32:12, 32:17, 32:19, 32:23, 32:25, 33:2, 33:9, 33:12, 33:16, 33:19, 34:4, 34:6, 34:10, 34:13, 34:15, 34:17, 34:19, 34:22, 35:1, 35:3, 35:7, 35:9, 35:11, 35:13, 35:18, 35:21, 35:24, 36:6, 36:10, 36:12, 36:16, 37:11, 37:15, 37:19, 37:24, 38:11, 38:13, 38:15, 38:17, 39:6, 39:9, 39:18, 39:22, 40:2, 40:7, 40:11, 41:4, 41:10
**themselves** [1] - 13:6
**therefore** [1] - 17:18
**they've** [3] - 13:15, 24:14, 24:18
**thinking** [5] - 8:12, 9:15, 10:5, 22:2
**third** [6] - 2:16, 14:23, 15:6, 15:7, 21:16, 37:8
**Third** [2] - 19:4, 20:15
**Thompson** [1] - 12:17
**Thornton** [1] - 19:4
**thorough** [1] - 18:17
**thoughts** [2] - 2:10, 27:11
**threatening** [1] - 2:17
**three** [6] - 5:17, 21:6, 21:8, 27:18, 30:6,

38:19
**throw** [1] - 23:12
**THURSDAY** [1] - 1:8
**tie** [2] - 33:21, 34:11
**ties** [1] - 33:22
**today** [3] - 3:14, 34:20, 37:8
**Todd** [1] - 1:15
**TODD** [23] - 2:13, 5:23, 5:25, 6:22, 7:17, 7:20, 8:5, 8:8, 8:24, 9:21, 9:24, 10:2, 10:18, 10:21, 10:23, 11:9, 11:17, 11:21, 11:24, 12:5, 24:10, 40:6, 40:8
**together** [1] - 14:24
**tomorrow** [4] - 26:12, 41:3, 41:6, 41:8
**tone** [1] - 23:2
**took** [1] - 34:2
**totally** [2] - 12:18, 33:20
**toward** [1] - 16:5
**tower** [1] - 40:14
**Transcript** [1] - 1:22
**transcript** [6] - 2:1, 15:14, 16:1, 41:12, 41:17, 41:18
**transcripts** [1] - 21:7
**trial** [9] - 4:2, 5:18, 9:10, 21:2, 21:17, 23:16, 26:5, 33:22, 37:17
**TRIAL** [1] - 1:10
**trick** [1] - 38:1
**tried** [1] - 3:3
**tries** [1] - 2:22
**trigger** [1] - 3:6
**triggers** [1] - 11:11
**trouble** [1] - 8:17
**true** [1] - 41:17
**truncated** [1] - 17:3
**truth** [1] - 19:8
**try** [5] - 22:20, 23:1, 30:8, 31:20, 34:13

**trying** [9] - 7:14, 9:3, 19:16, 23:7, 24:16, 24:17, 24:19, 25:15, 36:23
**Tuesday** [2] - 26:17, 33:13
**turn** [1] - 4:4
**two** [7] - 4:6, 5:18, 17:4, 17:23, 27:18, 36:24, 37:2
**twofold** [1] - 12:11
**type** [2] - 5:24, 27:10
**typed** [1] - 16:22

## U

**U.S** [1] - 37:9
**U.S.C** [1] - 41:17
**ultimate** [1] - 31:12
**ultimately** [1] - 22:10
**unbiased** [1] - 40:10
**uncoerced** [1] - 17:15
**under** [2] - 13:1, 18:7
**understood** [1] - 10:18
**uneasy** [1] - 13:18
**UNITED** [2] - 1:1, 1:4
**United** [12] - 1:13, 1:15, 3:15, 4:4, 5:2, 17:15, 17:20, 17:25, 19:3, 21:1, 41:16, 41:19
**unless** [1] - 38:4
**unlike** [1] - 18:16
**unprompted** [2] - 2:25, 3:19
**unqualified** [1] - 17:19
**unquestionably** [1] - 17:22
**unreasonably** [1] - 3:9
**untoward** [2] - 7:1, 17:9
**up** [17] - 14:11, 22:9, 23:20, 24:17, 25:1, 25:7, 26:9, 27:17, 28:11,

31:21, 32:9, 32:25, 34:20, 35:24, 36:24, 39:12
**ups** [3] - 26:15, 26:16, 40:5
**urge** [1] - 39:3

## V

**Vegas** [3] - 19:11, 19:23, 20:4
**versus** [14] - 3:15, 3:25, 4:4, 5:2, 17:15, 17:20, 18:1, 18:5, 18:14, 18:19, 19:1, 19:3, 19:18, 21:1
**via** [1] - 14:23
**video** [2] - 7:9, 8:2
**view** [1] - 13:2
**violent** [1] - 21:3
**viral** [1] - 8:2
**voir** [13] - 16:24, 17:5, 17:12, 17:18, 17:22, 19:24, 21:8, 21:10, 22:13, 22:23, 26:18, 27:10, 35:4
**vote** [1] - 2:18
**vs** [1] - 1:5

## W

**wait** [4] - 14:3, 14:15, 16:10, 38:11
**waiving** [1] - 25:19
**walk** [1] - 22:15
**walks** [1] - 27:8
**wants** [1] - 9:1
**watchful** [1] - 17:17
**watching** [1] - 40:11
**ways** [1] - 7:24
**wear** [2] - 34:11, 34:12
**week** [7] - 5:17, 23:17, 26:7, 34:12, 40:19, 41:1
**weekend** [14] - 8:22, 23:22, 26:11, 26:12, 37:14, 38:6, 38:8, 38:23,

39:1, 39:3, 40:17, 41:1, 41:10
**welcome** [1] - 36:14
**whole** [1] - 33:22
**wicked** [1] - 19:19
**willing** [1] - 24:7
**window** [2] - 22:2, 22:3
**wise** [1] - 20:20
**witness** [4] - 14:11, 14:23, 15:1, 40:21
**witnesses** [1] - 5:9
**Wolf** [2] - 18:5, 18:19
**wonder** [1] - 7:9
**wonderful** [1] - 39:1
**wondering** [2] - 33:21, 34:1
**words** [1] - 24:15
**worries** [1] - 17:7
**worth** [1] - 4:15
**wrestled** [1] - 20:18
**write** [2] - 36:22, 36:23
**writing** [1] - 2:5
**written** [1] - 2:9

## Y

**yesterday** [22] - 3:8, 6:17, 7:4, 10:12, 24:3, 24:15, 24:24, 27:22, 28:13, 29:3, 29:20, 30:10, 31:6, 31:22, 32:12, 33:5, 33:25, 34:7, 34:22, 35:14, 35:18, 36:1

## Z

**zeroing** [1] - 25:4

## §

**§** [1] - 41:17