IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| UNITED STATES | : | |
| --- | --- | --- |
| | : | |
| | : | |
| v. | : | Case No. BAH-22-0140 |
| | : | |
| DENNIS HAIRSTON, et al. | : | |
| | : | |
| Defendant | : | |

**JOINT REPLY IN SUPPORT OF MOTION FOR NEW TRIAL**

Dennis Hairston, by and through Andrew R. Szekely and Sasha Garcon, Assistant Federal Public Defenders, and Donte Stanley, by and through Gary Proctor and Jennifer Smith, hereby file the following reply to the government's response to Mr. Hairston and Mr. Stanley's Joint Motion for New Trial. As discussed below, the Court should find the Joint Motion for New Trial's filing outside the 14-day filing window provided by Rule 33 was permitted because of excusable neglect and that the CRD's conflict merits a new trial.

**I.  There is No Procedural Bar to Addressing the Merits of the Joint Motion for New Trial**

The government argues that because Mr. Hairston and Mr. Stanley did not file a Motion for New Trial within 14 days of the Court's disclosure of CRD's employment the Court should deny the motion without addressing its merits. Gov. Resp. at 12-22. The government's argument fails under both a plain reading of Fed.R.Crim.P. 33 and an examination of the *Pioneer Investment Services Co. v. Brunswick Associates*, 507 U.S. 380, 395 (1993) factors.

The government contends a new 14-day clock started to run on July 3, 2024. The defense must, the government argues, therefore explain why they did not file a Motion for New Trial by July 17, 2024. This argument is, however, based on a faulty premise – that Mr. Hairston and Mr. Stanley were required to file a Motion for New Trial within 14 days of the Court's July 3, 2024, letter.

1

Rule 33 provides in relevant part: Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days *after the verdict or finding of guilty.* Fed.R.Crim.P. 33(b)(2) (emphasis added).

The rule's plain language ties the 14-day deadline to the return of the verdict. It says nothing about the situation here – information that is discovered outside of 14 days that impacts the integrity of the verdict but is not "newly discovered evidence" for purposes of Rule 33. The only other language in Rule 33 about the timing of the filing of a motion for new trial is Rule 33(b)(1)'s 3-year deadline for motions based on newly discovered evidence. Further, the government provides no authority from any cases to support the creation of a deadline where the rule does not provide one. Mr. Stanley and Mr. Hairston's failure to file their Motion for New Trial within 14 days of verdict should be the relevant starting point for analyzing the late filing under the excusable neglect standard, not the government's invented deadline.

The government's attempt to impose a 14-day deadline where the rule's text does not require one is nothing more than an attempt to shift the reason for delay in the case onto the defendants instead of the ex-CRD and her current employer. The Court should not be persuaded that this *Pioneer* factor, the reason for the delay, favors the government.

The reason for the post-verdict litigation in this case is the failure of the former Courtroom Deputy Clerk to follow the clear and direct rules of her then-employer regarding seeking new employment; and the United States Attorney's Office decision to hire a CRD without taking steps to ensure her continued employment with the Court, before which that office practices, did not give rise to any conflicts. Indeed, the supervisor who interviewed the CRD was present in the courtroom during one portion of the trial and said nothing. Mot. for New Trial, Exhibit F at 2. Had she alerted government trial counsel, they surely would have brought the issue to the Court's attention and the CRD would have been promptly replaced.

The reason for the delay not only supports Mr. Hairston and Mr. Stanley's claim of excusable neglect, but it also prevents the government from raising the equitable defenses altogether because they do not have clean hands. *See Plant v. Merrifeld Town Center Ltd. Partnership*, 711 F.Supp. 576, 596 (E.D.Va. 2010) (citing *Precision Instr. Mfg. Co. v. Auto. Maintenance Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945) (holding that under federal common law, a party seeking to raise an equitable remedy or defense must have "clean hands") and *Pioneer*, above, at 395. The government's hands are unclean because regardless of whether the United States Attorney's Office had a policy governing hiring court employees, somebody at that office should have been aware that hiring Court employees poses potential conflict of interest rules. The failure of the government to identify the issue or have a policy in place for this situation created the circumstances that led to the conflict in the first instance.

In the context of a post-verdict communication from the Court, the parties' delay in seeking further relief is not unreasonable. Further, the record in the case was not complete until the February 25, 2025, evidentiary hearing. Had, *arguendo*, Mr. Stanley and Mr. Hairston filed a Motion for New Trial within 14-days of the Court's letter, the delay in the case would have been the same except for 26 days as the defense requested an evidentiary hearing, albeit in the context of what then-appeared to be a continuation of the *Remmer* issues raised at trial. In other words, even under the deadline the government is reading into the Rule, the total delay in the case from any late filing is 26 days, not the 9 months the government argues.

In that context, the government is not as prejudiced on retrial. *See United States v. Chujoy*, 207 F.Supp. 660, 665 (W.D.Va. 2016) (holding that the prejudice analysis covers only the period of delay in filing, not the time required to address the post-verdict litigation). The government argues that this trial would be harder to retry now than had the motion been filed sooner. But each of their arguments as to why fails. First, although dozens of witnesses testified, the vast

majority were law-enforcement officers testifying about their well-documented investigation. These memories can be easily refreshed. The government next argues that the victim witnesses' memories may fade, but the emotional nature of that testimony means these memories are not likely to fade.

Finally, any prejudice the government would suffer from the unavailability of a cooperating witness should not be held against Mr. Hairston or Mr. Stanley. The cooperating witness was sentenced on September 6, 2024 – after the post-verdict litigation in this case began. The government, knowing there was pre-sentencing litigation coming, could have postponed that sentencing in the event the Court granted a new trial. As part of his plea agreement, the cooperator agreed that he would consent to "postponements of sentencing as may be requested" by the government to ensure the cooperation was complete. Gov. Trial. Ex. 44.1 at 19. The government chose to proceed regardless, a decision that cannot be held against Mr. Stanley or Mr. Hairston.

For the reasons detailed above and those in the Joint Motion for New Trial, the Court should find that the delay in filing was excusable.

## II. The Clerk's Conflict Requires a New Trial

Had the CRD's prospective employment been disclosed prior to the start of trial, the appropriate response would have been to remove her from the case. Had the CRD's employment been disclosed mid-trial, the proper response again would be to have immediately removed her from the case. The Court would not have engaged in an analysis of whether the CRD's duties were ministerial enough to warrant her remaining on the case. Instead, she would have been reassigned immediately.

The Court would have removed the CRD because, "[e]ven when a judge attempts to isolate a law clerk from any direct involvement in cases in which the law clerk has a conflict,

4

there is no assurance that the problems created ... will be avoided," *Santos v. Countrywide Home Loans*, No. CIV 2:09-2642 WBSDAD, 2009 WL 5206682, at *8 (E.D. Cal. Dec. 22, 2009). The safest course where a law clerk has a conflict of interest, is that she be instructed by the judge "not to do *any* work on the matter," *First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 989 (9th Cir. 2000) (emphasis in original); *see also Reddy v. Jones*, 419 F. Supp. 1391 (W.D.N.C. 1976) (disqualification unnecessary when law clerk with conflict of interest was "taken off *all* work, conference, hearings, or other activity, *including the delivery of messages*" in the case) (emphasis added). Instructing the law clerk merely "not to do *substantive* work" on the matter does "not go far enough to forestall recusal." *First Interstate Bank of Ariz.*, 210 F.3d at 989 (emphasis in original).

While the Government argues that the critical question in this case is whether the CRD's conflict can be imputed to the tribunal itself. Gov't Response at 21. In the cases cited by the Government, the question is whether a law clerk or judicial employee has influenced the opinion of the judge related to a non-jury civil matter or to a motions hearing. In those instances, the judge was the ultimate arbiter of both law and fact in those proceedings. In the context of a jury trial, the jury is the ultimate decider of fact. The focus of the inquiry here, therefore is whether there is an appearance of impropriety related to the CRD's interactions with the jury, not the judge.

Unfortunately, because of the CRD's failure to disclose, the trial proceeded without an opportunity to reassign her. The trial in this case did not proceed in the way that trials normally proceed. The type of conflicts of interest and corresponding conduct presented here is somewhat unprecedented and certainly not routinely encountered by federal courts. The CRD was tasked with responding to communications from jurors that went far beyond routine questions about the logistics of the actual trial. The jurors in this case made comments and raised concerns to the

CRD about several different issues. Those issues were substantive enough that they resulted in two requests for an inquiry of the jury and a motion for a mistrial. While the CRD did bring each conversation with the jurors to the Court's attention afterwards, the CRD needed to respond to the jurors in those moments in a way that was both helpful and appropriate given the specific circumstances. She did not simply stay silent and immediately take the concerns to the judge.

Having to calm jurors' fears about their safety in the courtroom or answer inquiries as to why defendants were not shackled involves exercising judgment and discretion, which while not as substantive as a law clerk's work on a case, nonetheless goes beyond managing exhibits or other logistical matters. It required the CRD to use her own judgment, interpretation, and discretion to respond appropriately before bringing the matter before the judge.

The facts of this case give rise to an appearance of impropriety that is more pronounced than the hypothetical conflicts routinely presented. While the parties agree that a "non-cynical" observer is the standard for imputed conflicts, that observer "must be someone outside the judicial system because judicial insiders, 'accustomed to the process of dispassionate decision making and keenly aware of their Constitutional and ethical obligations to decide matters solely on the merits, may regard asserted conflicts to be more innocuous than an outsider would.'" *In re Kensington Int'l Ltd.*, 368 F.3d 289, 303 (3d Cir. 2004) (quoting *United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998)). When looking at the facts of this case through that lens, the conflict coupled with the CRD's interactions with the jury in this case is not innocuous to an outside observer who knows all the facts.

The Court should therefore order a new trial on Counts One, Two, Three, Four, Five. Six, Seven, and Eight as to Mr. Hairston and Counts One, Two, Three, and Four as to Mr. Stanley.

Respectfully submitted,

James Wyda
Federal Public Defender
 for the District of Maryland

\_\_\_/s/_____
Andrew R. Szekely
Sasha Garcon
Assistant Federal Public Defenders
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: (410) 962-3962
Fax: (410) 962-3976
Email: andrew_szekely@fd.org
         sasha_garcon@fd.org


\_\_\_/s/_____
Gary E. Proctor (Bar No. 27936)
 \_\_\_/s/_____
Jennifer E. Smith (Bar No. 20767)
The Law Offices of Gary E. Proctor, LLC
8 E. Mulberry Street
Baltimore, Maryland 21202
(410) 444-1500 (tel.)
(443) 836-9162 (fac.)
garyeproctor@gmail.com
jennsmith0890@gmail.com